

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

HON. TRACIE M. HUNTER    :  Case  **1:15CV540**
P.O. Box 32325        :
Cincinnati, Ohio 45232     :
           :
    **PLAINTIFF,**   :
           :  **JUDGE  J. BARRETT**
  **V.**         :
           :
HAMILTON COUNTY, OHIO/HAMILTON :  **M.J. LITKOVITZ**
COUNTY BOARD OF COMMISSIONERS :
HON. GREG HARTMAN    :
HON. TODD PORTUNE     :
HON. CHRIS MONZEL     :  **COMPLAINT AND JURY DEMAND**
138 Court Street, Room 603   :
Cincinnati, Ohio 45202    :
           :
    And       :
           :
HON. JOHN M. WILLIAMS    :
Hamilton County Juvenile Court,  :
800 Broadway, Fourteenth Floor  :
Cincinnati, Ohio 45202    :
           :
    And       :
           :
HON. CURT KISSINGER     :
Hamilton County Courthouse   :
1000 Main Street,      :
Cincinnati, Ohio 45202    :
           :
    And       :
           :
CONSTANCE MURDOCK     :
Hamilton County Juvenile Court  :
800 Broadway, First Floor   :
Cincinnati, Ohio 45202    :
           :
    And       :
           :

**DWAYNE BOWMAN**                                        :
**Hamilton County Juvenile Court Youth Center**  :
**2020 Auburn Avenue**                                 :
**Cincinnati, Ohio 45219**                            :
                                                       :
        And                                              :
                                                       :
**LAURA WICKETT**                                       :
**Hamilton County Juvenile Court**                     :
**800 Broadway**                                        :
**Cincinnati, Ohio 45202**                             :
                                                       :
        And                                              :
                                                       :
**HON. JOSEPH DETERS**                                  :
**Hamilton County Prosecutors Office**                 :
**230 E. Ninth Street, Suite 4000**                    :
**Cincinnati, Ohio 45202**                            :
                                                       :
        And                                              :
                                                       :
**HAMILTON COUNTY PUBLIC DEFENDER**                     :
**COMMISSION/ c/o RAY FALLER**                          :
**230 E. Ninth Street, Second Fl.**                    :
**Cincinnati, Ohio 45202**                            :
                                                       :
        And                                              :
                                                       :
**HON. NORBERT NADEL**                                  :
**Hamilton County Courthouse**                         :
**1000 Main Street**                                   :
**Cincinnati, Ohio  45202**                           :
                                                       :
        And                                              :
                                                       :
**HON. BETH MEYERS**                                    :
**330 Hamilton County Courthouse**                     :
**1000 Main Street**                                   :
**Cincinnati, Ohio 45202**                            :
                                                       :
        And                                              :
                                                       :
**SCOTT CROSWELL, ESQ.**                                :
**Croswell & Adams Co., L.P.A.**                       :
**1208 Sycamore Street**                               :
**Olde Sycamore Square**                               :

2

Cincinnati, Ohio 45202                     :

And                     :

MERLYN SHIVERDECKER, ESQ.      :
Carr and Shiverdecker           :
817 Main St, Cincinnati, OH 45202   :

And                     :

HON. SYLVIA SIEVE HENDON      :
First District Court of Appeals     :
230 E. Ninth Street, 12th Floor     :
Cincinnati, Ohio 45202                      :

And                     :

HON. PENELOPE CUNNINGHAM    :
First District Court of Appeals     :
230 E. Ninth Street, 12th Floor     :
Cincinnati, Ohio 45202                      :

And                     :

HON. PATRICK DEWINE           :
First District Court of Appeals     :
230 E. Ninth Street, 12th Floor     :
Cincinnati, Ohio 45202                      :

And                     :

HON. PATRICK DINKELACKER     :
Hamilton County Courthouse      :
1000 Main St # 360             :
Cincinnati, OH 45202           :

And                     :

HON. LEE H. HILDEBRANDT      :
First District Court of Appeals     :
230 E. Ninth Street, 12th Floor     :
Cincinnati, Ohio 45202                      :

And                     :

FIROOZ NAMEI, ESQ.           :

3

McKinney & Namei, L.P.A.                          :
15 E. 8th St., Cincinnati, Ohio 45202             :
                                                  :
    And                       :
                                                  :
JAMES BOGEN, ESQ.                                 :
917 Main Street, Second Floor                     :
Cincinnati, Ohio 45202                            :
                                                  :
      DEFENDANTS.    :

*All Defendants are named individually and in their*
*Official capacities as county or state employees,*
*unless otherwise stated.*


## JURISDICTION

1.  Jurisdiction over Plaintiff's civil rights claims is conferred on this Court by §§ 42

U.S.C. 42 U.S.C. §§ 1983, 1985, 1986, 1988; 28 U.S.C. §§1331(a), 1343(a) and 1344.

2.  Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367(a).

3.  The actions that are set forth within this complaint occurred within Hamilton

County, Ohio. Therefore, venue with this court is proper pursuant to S.D. Ohio Local Rule 82.1.


## I. PARTIES

4.  Plaintiff, Judge Tracie M. Hunter ("Judge Hunter"), has at all times relevant to

this action been a resident and citizen of the State of Ohio. She was elected as Judge of the

Hamilton County Juvenile Court by over 120,000 citizens in 2010, but was not seated until May

2012 after winning a federal election lawsuit she filed in this Court to have votes that were

systematically discarded in primarily African-American districts counted (the "Election

Lawsuit"). She is currently suspended due to the wrongful actions of Defendants as set forth

below.

5.　　　　Defendant Hamilton County/Hamilton County Board of County Commissioners ("Defendant County") consists of Greg Hartmann, Todd Portune and Chris Monzel and is a unit of local government organized under the laws of the State of Ohio. Defendant County is contractually responsible for adopting and authorizing the employment policies of Juvenile Court and the Detention Center. Said Defendant is also responsible for controlling the budget of Hamilton County. Defendant Hamilton County is sued through the Hamilton County Board of Commissioners, who is named pursuant to O.R.C. § 305.12. Defendant County is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

6.　　　　Defendant John Williams is one of two Judges of the Hamilton County Juvenile Court. Plaintiff is the other Judge. Defendant is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity.

7.　　　　Defendant Curt Kissinger was employed by Defendant John Williams as the court administrator of Juvenile Court. Defendant Kissinger is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as a county employee.

8.　　　　Defendant Constance Murdock is employed by Hamilton County as the Executive Director of Case Management of the Hamilton County Juvenile Court. Defendant Murdock is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued individually and in her official capacity as a county employee.

9.　　　　Defendant Dwayne Bowman is employed by Hamilton County as the Superintendent of the Hamilton County Juvenile Court. Defendant Bowman is a person under

42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as a county employee.

10.     Defendant Laura Wickett is employed by Hamilton County as the Director of Human Resources for the Hamilton County Juvenile Court. Defendant Wickett is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued individually and in her official capacity as a county employee.

11.     Defendant Joseph T. Deters is employed as the Hamilton County Prosecutor. Defendant Deters is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as a county employee.

12.     Defendant Ray Faller is employed as the Hamilton County Public Defender. Defendant Faller is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as a county employee.

13.     Defendant Norbert Nadel was employed as a Judge of the Hamilton County Common Pleas Court, General Division. Defendant Nadel is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity.

14.     Defendant Beth Meyers is employed as a Judge of the Hamilton County Common Pleas Court, General Division. Defendant Meyers is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued individually and in her official capacity.

15.     Defendant Scott Croswell is contracted by Hamilton County as a Special Prosecutor. Defendant Croswell is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity.

6

16.     Defendant Merlyn Shiverdecker is contracted by Hamilton County as a Special Prosecutor. Defendant Shiverdecker is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued individually and in his official capacity.

17.     Defendant Penelope Cunningham is employed as a Judge of the First District Court of Appeals, located in Hamilton County, Ohio. Defendant Cunningham is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  She is sued individually and in her official capacity.

18.     Defendant Patrick DeWine is employed as a Judge of the First District Court of Appeals, located in Hamilton County, Ohio.  Defendant DeWine is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued individually and in his official capacity.

19.     Defendant Patrick Dinkelacker was employed as a Judge of the First District Court of Appeals, located in Hamilton County, Ohio.  Defendant Dinkelacker is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued individually and in his official capacity.

20.     Defendant Firooz Namei is a practicing attorney in the State of Ohio.  He was contracted by Defendant Hamilton County, at the recommendation of Defendant Deters, to represent Judge Hunter in nearly twenty lawsuits filed against her in her judicial capacity.

21.     Defendant James Bogen is a practicing attorney in the State of Ohio.  He was contracted by Defendant County, at the recommendation of Defendant Deters, to represent Judge Hunter in nearly twenty lawsuits filed against her as Judge.

## II. STATEMENT OF FACTS

22.     Plaintiff is an African-American female who was elected as a Judge of the Hamilton County Juvenile Court by over 120,000 people in November 2010, but was not seated until May 25, 2012 because Defendants Williams and Deters opposed the votes being counted. Defendants' retaliatory and vindictive conduct, which continued after Judge Hunter won the election, has irreparably harmed Hunter and reduced her six-year term in violation of the law.

23.     Judge Hunter's official statutory term commenced January 1, 2011, although she was not sworn in until May 25, 2012. She has been suspended since January 10, 2014, based on the wrongful actions of Defendants, including: Defendant Deters, who represented the Board of Elections against Judge Hunter in the Election Lawsuit; and Defendant Williams, Judge Hunter's opponent in the 2010 election, who opposed Hunter's election and intervened in the Election Lawsuit on behalf of Defendant Deters. Her official statutory term runs until December 31, 2016.

24.     Judge Hunter's brother Stephen E. Hunter was hired by the Juvenile Court in 2007, five years before his sister, Tracie M. Hunter, was elected Judge of Hamilton County Juvenile Court and was rehired in January 2012. Judge Hunter was not involved with her brother's hiring either time.

25.     Defendants Shiverdecker and Croswell, with intent to vindictively and maliciously convict Judge Hunter in violation of her constitutional rights, knowingly lied when they told the jury that Stephen Hunter, Jr. was hired as a personal favor to Judge Hunter.

26.     Defendant County, in violation of the Constitution of the United States has at all times prior to her illegal suspension, treated Judge Hunter differently than Defendant Williams, who is Caucasian, in violation of her equal protection and due process rights.

27.     Defendant County immediately hired Defendant Williams independent counsel when he was sued, but refused to hire Judge Hunter independent legal counsel when she was sued nearly 20 times by Defendants Deters, Hamilton County, the Public Defender, Faller, WCPO and the Cincinnati Enquirer, despite admitting publicly that Defendant Deters had a conflict of interest that legally and ethically precluded him from representing Judge Hunter.

28.     Defendant County acknowledged in writing and during public meetings that Defendant Deters had a clear conflict of interest that precluded him from representing Judge Hunter, but allowed Defendant Deters to represent Judge Hunter despite said conflict.

29.     Defendant County allowed Defendant Deters to represent Judge Hunter in lawsuits brought against her by other county employees, while Defendant Deters dually represented those county employees against Judge Hunter in violation of her rights.

30.     Defendant County caused Defendant Deters to represent Judge Hunter while the Election Lawsuit was ongoing, and remained open until late 2013, allowing Defendant Deters to both sue Judge Hunter and defend Judge Hunter simultaneously, in violation of the law.

31.     Defendant County sued Judge Hunter when she attempted to hire a court administrator in compliance with the Ohio Revised Code and Ohio Constitution, despite knowing that: prior judges each employed separate court administrators; and that the county never sued those white judges, violating Judge Hunter's rights to equal treatment and protection.

32.     Defendant County retained Defendants Bogen and Namei, at the recommendation of Defendant Deters, to represent Judge Hunter and allowed them to continue to represent Judge Hunter even after Commissioners learned and publicly acknowledged that Defendants Deters, Namei and Bogen failed to file answers in 12 lawsuits filed against Judge Hunter.

33.     Defendant County purposefully caused Judge Hunter to be accused and indicted on theft and misuse of credit card felony charges when they knew that Judge Hunter at all times used her assigned credit card to solely conduct official business of Hamilton County Juvenile Court and the agreement she signed said only that her card was authorized for court business.

34.     Defendant County knew at the time Judge Hunter was wrongfully charged with theft and misuse of a credit card that Defendant County, by and through its officials and other agents, had admitted that it was entirely liable for the filing fees.

35.     Defendant Board of Commissioners knew that at the time Judge Hunter was charged with theft that employees of Juvenile Court, Defendant Deters, James Harper, former Judge Karla Grady and other white county employees all used their credit cards outside of the statute they accused Hunter of violating, but those employees were never charged with theft or misuse of a credit card in violation of Hunter's rights to equal protection and due process.

36.     Defendant County knew that if Defendants Deters, Bogen and Namei had competently represented Judge Hunter, it would not have been necessary for her to file notices of appeal in her judicial capacity to protect the Court after 12 default judgments were granted against Judge Hunter as a direct result of Defendants' reckless failure to defend the lawsuits.

37.     Defendant County knew at the time they allowed Defendant Deters to represent Judge Hunter that Defendant Deters routinely made derogatory and defamatory statements about Judge Hunter in the media in violation of her rights to equal protection and due process.

38.     Defendant County, in violation of the law, allowed Defendant Williams to control the entire budget of the Hamilton County Juvenile Court, including Judge Hunter's budget.

39.     Defendant County, in violation of the law, allowed Defendant Williams and Wickett to prevent Judge Hunter from hiring the necessary personnel to ensure the safety of Judge Hunter's staff after multiple threats were made against Judge Hunter and her staff.

40.     Defendant County violated Judge Hunter's right to due process and equal protection under the law and effective assistance of counsel when they failed to appoint Judge Hunter independent counsel to represent her in nearly 20 lawsuits, but authorized independent competent legal counsel immediately for Defendant Williams when he was sued.

41.     Defendant County at Defendant Deters' recommendation sued Judge Hunter in violation of the law and her right to equal protection when she hired a separate court administrator to assist her as Juvenile Court Judge as had prior white judges before her.

42.     Defendant County refused to authorize funds to hire independent legal representation for Judge Hunter when she was sued, despite her numerous requests.

43.     Defendant County immediately authorized independent legal representation for Defendant Williams when he was sued, treating Judge Hunter differently than the white male Judge in violation of the Equal Protection and Due Process Clauses of the Constitution.

44.     Defendant County retained lawyers, recommended by Defendant Deters, to represent Judge Hunter after Defendant Deters admitted a conflict of interest and terminated his representation of Judge Hunter.

45.     Defendant County paid Defendants Bogen and Namei over $80,000 despite knowing that Defendants Bogen and Namei recklessly failed to file answers in 12 lawsuits brought against Judge Hunter, which Judge Hunter appealed to the Ohio Supreme Court.

46.     Defendant County hired Defendants Namei and Bogen to represent a judge of Juvenile Court despite knowing that neither lawyer had experience in Juvenile law issues.

11

47. Defendant County routinely retains, or causes to be retained, special prosecutors and visiting judges outside Hamilton County to hear cases involving white judges and prosecutors in Hamilton County, but did not follow the same practice for Judge Hunter.

48. Defendant County knew or should have known that Hamilton County retained a visiting Judge to hear Defendant Deters' divorce case during the same time it selected local Judges to handle Judge Hunter's case, depriving her of equal protection and due process.

49. Upon information and belief, Defendant County knew or should have known that the Hamilton County Prosecutor's Office violated federal laws pertaining to the grand jury and petit jury selection process in violation of Judge Hunter's rights to receive a fair jury trial.

50. Upon information and belief, Defendant County knew or should have known that the jury selection process in Judge Hunter's criminal trial violated the Sixth Amendment.

51. Upon information and belief, Defendant County knew or should have known that Judge Hunter was falsely accused of crimes for actions admittedly taken by other employees of Hamilton County Juvenile Court.

52. Upon information and belief, Defendant County knew or should have known that Ohio Governor John Kasich appointed Defendant Williams as Judge to the HCJC in November 2011 to circumvent the 2010 election results and to prevent Judge Hunter in violation of the law from being the administrative judge of Juvenile Court and did so.

53. Defendants County, Williams and Wickett released a new Personnel Policy 10 days before Judge Hunter was sworn in to illegally circumvent equitable application of the Ohio Revised Code, the Ohio Constitution and the Constitution of the United States of America.

54.     Defendants County, Williams and Wickett knew at the time they changed the personnel manual, which had not been updated since 1990, that as a direct result, Judge Hunter would be treated differently than every white judge before her, including Defendant Williams.

55.     Defendant Williams, by and through his agents, changed the personnel policy to deprive Judge Hunter of performing her role as a statutory employer of Juvenile court treating her differently than every white judge before her in violation of the Constitutions of the United States and the State of Ohio.

56.     Defendant Williams at all times exercised and continues to exercise unlawful, sole control of the Juvenile Court, depriving the citizens of Hamilton County of equal protection and due process under the law, including Judge Hunter, and the people whose cases she would hear.

57.     Defendant Williams unlawfully exercised power over Judge Hunter's budget to illegally deprive Judge Hunter of the powers derived from her role as Judge in violation of the law.

58.     Defendant Williams, Wickett and Kissinger misappropriated the funds and human resources of Juvenile Court by unlawfully depriving Judge Hunter of her ability and duty to carry out her job as a judge with equal statutory authority as provided by the constitution.

59.     Upon information and belief, Defendant Williams or juvenile court employees under his authority, intercepted Judge Hunter's personal mail while she was on the bench and after she was suspended, invading her privacy and in violation of federal laws.

60.     Mail addressed to Judge Hunter at Juvenile Court, that she never received nor knew existed, was read in open court and entered into evidence by Defendants Croswell and Shiverdecker at Judge Hunter's criminal trial.

61.     Defendant Williams and Murdock routinely directed employees to remove cases that had been randomly assigned to Judge Hunter from Judge Hunter's docket and placed said cases on Defendant Williams' docket at the request of prosecutors, in violation of the law.

62.     Defendants Williams and Kissinger refused to turn over Judge Hunter's emails after multiple requests by Judge Hunter in violation of public records laws and federal statutes.

63.     Defendant Williams barred Judge Hunter from the Juvenile Court on January 10, 2014 without authority and illegally confiscated her judicial badge, shield and property in violation of her constitutional rights of due process, equal protection and the separation of powers.

64.     As administrative Judge, Defendant Williams was responsible for overseeing the docket, administration and operations of the Juvenile Court, including reporting accurate case statistics to the Ohio Supreme Court; and controlled those employees responsible for preparing accurate reports on behalf of Plaintiff Judge Hunter.

65.     Defendant Kissinger was responsible for assisting both Judges with operating the Court in violation of her right to equal protection and indiscriminate treatment.

66.     Defendant Kissinger assisted Defendant Williams as the court administrator, but refused to provide same assistance to Judge Hunter in violation of her rights to equal protection.

67.     Defendant Kissinger interfered with Judge Hunter's cases in violation of the law.

68.     Defendants Williams and Kissinger provided edited tapes of Judge Hunter's courtroom proceedings to the media and others, although Defendant Kissinger admitted that no other Judge's courtroom proceedings at Juvenile Court had ever been released.

69.     Defendants Williams and Kissinger provided tapes and other documents from Judge Hunter's hearings in violation of rules and law that specifically states that only the Judge presiding in those cases can release them, violating her right to equal protection and due process.

70.     Defendants Kissinger, Williams and Deters treated African-American children that appeared in Judge Hunter's courtroom differently than those that appeared in Judge Williams' courtroom in violation of the law.

71.     Defendant Kissinger and Williams routinely released confidential case information about African-American children to the media against Judge Hunter's instructions, in violation of their Fourteenth Amendment rights to be treated the same as non-African-American children.

72.     Defendant Murdock was responsible for training case managers to assist both judges with Juvenile Court entries, but when Judge Hunter commenced her position, Defendants Williams and Murdock had failed to train or provide a competent case manager that could prepare judicial entries for Judge Hunter and took six months to train a competent case manager, intentionally causing Judge Hunter's judicial entries to be executed untimely by Court staff.

73.     Defendant Murdock trained Judge Hunter's case manager Lisa Miller to date judicial entries the date of the hearing, regardless of when an entry was executed, to keep the entries in chronological order in the Juvenile Court Management system, according to trial testimony; but vindictively and maliciously accused Judge Hunter of backdating entries although Judge Hunter, new to Juvenile Court, relied on employees under Defendant's supervision and control to execute her entries in the manner customary and consistent with court practices.

74.     Defendants Williams, Kissinger, Murdock and Deters knew at the time Defendants Deters, Shiverdecker and Croswell falsely alleged that there were only two judicial

entries that were dated back to the dates of the hearing, but executed after the hearing, that there were over 75 entries executed by case management staff and other employees in the same manner, evidencing that dating entries to the hearing dates was a practice of the Juvenile Court.

75.     Defendants knew when they falsely stated that there were only two entries that had ever been dated in the manner alleged that such statement was false, but did so to maliciously and vindictively prosecute Judge Hunter in violation of the law with intent to harm her career and to defame her name and reputation and did so.

76.     Defendants Williams, Kissinger, Murdock Shiverdecker and Croswell compelled Lisa Miller to testify falsely in order to vindictively and maliciously prosecute Judge Hunter.

77.     Defendants Williams, Kissinger, Murdock, Shiverdecker and Croswell intentionally, in violation of the law, withheld exculpatory evidence from Judge Hunter in order to maliciously and vindictively convict Judge Hunter of crimes they knew she did not commit.

78.     In August 2012, Judge Hunter discovered that the clerk's office under Defendants Williams' and Murdock's control routinely prepared and provided Judge Hunter form D reports reflecting inaccurate Juvenile Court case statistics to sign and send to the Ohio Supreme Court.

79.     Judge Hunter sent multiple emails to Defendant Murdock notifying her that the statistics were false and inaccurate; and Judge Hunter either refused to sign the reports or noted her objection to the accuracy of said reports as a disclaimer at the bottom of the reports, then signed the reports to be in compliance with the Ohio Supreme Court.

80.     Defendant Murdock admitted that the clerk's office improperly compiled case data, which was supplied monthly to the Ohio Supreme Court and acknowledged to be accurate, but told Judge Hunter that she and clerk John Cullum were trained to execute reports that way.

16

81. Plaintiff Hunter contacted the Ohio Supreme Court and notified Stephanie Hess that the reports were inaccurate and requested direction on correcting past and future reports.

82. A team of court employees was assembled, following Judge Hunter's discovery, to retool the entire Juvenile Court Case Management System and correct inaccurate case data reporting and said JCMS was completely overhauled after Judge Hunter noted the discrepancies.

83. Defendant Williams as the Administrative Judge at all times had the duty to ensure that all reports, including Form D, were accurately prepared by Juvenile Court employees.

84. Defendant Williams contacted the Ohio Supreme Court and accused Judge Hunter of having cases pending beyond deadline when Defendant Williams, per public records released by the Ohio Supreme Court, had more cases pending beyond deadline than Judge Hunter.

85. In response to Defendant Williams' complaint to the Ohio Supreme Court about Judge Hunter, Judge Hunger sent a comprehensive response to Stephanie Hess outlining each and every case on her docket demonstrating that Defendant Williams' accusations were false.

86. Defendant Williams knew at the time he falsely accused Hunter of having backlogged cases that Judge Hunter was in compliance with the rules of Superintendence as they were written.

87. Defendant Murdock falsified court records and reports identifying Judge Hunter as the jurist on multiple cases that Defendant Murdock and other Magistrates presided over for years that never appeared before Judge Hunter and were pending beyond time guidelines recommended by the Ohio Supreme Court under those jurists of record and not Judge Hunter.

88. Defendant Murdock, per Lisa Miller's testimony, changed Judge Hunter's judicial entries, including dates, without Judge Hunter's knowledge, authorization or consent.

89.     Defendant Murdock fraudulently and illegally changed Judge Hunter's rulings in court cases without Judge Hunter's knowledge, authorization or consent, harming Judge Hunter's professional name, reputation and career; illegally depriving children of their constitutional rights; and causing Judge Hunter to be falsely accused of backdating documents that were created and modified at Defendant Murdock's direction, not Judge Hunter's.

90.     Defendant Connie Murdock instructed and trained Lisa Miller as a case manager, not Judge Hunter; and Lisa Miller testified that she routinely consulted Defendant Murdock, not Judge Hunter.

91.     Miller admitted at trial that she and/or Defendant Murdock often modified Judge Hunter's entries, including the two that Defendants Croswell, Shiverdecker and Deters falsely accused Judge Hunter of backdating, then maliciously and vindictively prosecuted Judge Hunter.

92.     Defendant Murdock routinely transferred cases from Judge Hunter's docket to Defendant Williams' docket in violation of Judge Hunter's right to legally preside over those cases.

93.     Defendant Murdock illegally modified and/or reversed Judge Hunter's rulings and/or directed Lisa Miller to modify Judge Hunter's judicial rulings without Judge Hunter's knowledge or authorization resulting in Judge Hunter being falsely accused of crimes in violation of Judge Hunter's rights to due process and equal protection.

94.     Defendants Murdock, Williams, Deters, Shiverdecker and Croswell were all aware that Defendant Murdock and/or Lisa Miller, at Murdock's direction, modified and altered Judge Hunter's rulings and judicial entries without Judge Hunter's consent, but falsely accused Judge Hunter of backdating the documents for which Judge Hunter was charged with crimes.

95.     Defendants Murdock, Williams, Shiverdecker and Croswell all knew that at the time false accusations were made against Judge Hunter, that they were untrue and that the court's computer software program clearly revealed that Judge Hunter did not create the documents.

96.     After accusing Judge Hunter of backdating two entries, for which she was charged with crimes, Defendants immediately changed the software program to hide the computer paper trail, which Judge Hunter requested, before she was indicted or aware of any investigation that would prove she had not tampered with evidence or committed forgery.

97.     Defendant Bowman made statements alleging actions by Plaintiff Judge Hunter, which he knew to be false, or in reckless regard for the truth.

98.     Defendants Bowman, Williams, Wickett, Shiverdecker and Croswell falsely accused Judge Hunter of supplying medical or and/or any confidential records to her brother former Juvenile Correction Officer Stephen Hunter when they knew that accusation was false.

99.     Defendants Bowman, Williams, Wickett, Shiverdecker and Croswell with malicious intent falsely alleged that Judge Hunter interfered with Stephen Hunter's termination, when they knew that Janaya Trotter informed them at the administrative hearing that her brother Stephen Hunter did not want his job back at the Juvenile Court regardless of the outcome.

100.    Defendant Bowman knew that multiple juvenile court employees contacted Judge Hunter and requested Judge Hunter to investigate their specific personnel issues and grievances.

101.    Defendant Bowman lied when he said that Judge Hunter held a private meeting at the Youth Center on behalf of Stephen Hunter, Jr., when he knew that employees requested a private meeting with Judge Hunter because those employees were afraid that Defendant Bowman and the administration would retaliate against them if he knew they contacted Judge Hunter.

102.    Defendant Bowman knew that Judge Hunter's brother Stephen Hunter, Jr. did not attend nor was involved with the youth center staff meeting when he falsely testified with malicious intent to convict Plaintiff Hunter and did that the meeting was about her brother.

103.    Defendant Bowman knew that Judge Hunter never raised Stephen Hunter's name during that meeting, and only recorded the complaints made by youth center employees.

104.    Defendant Bowman lied to the jury with malicious intent when he told the jury that Judge Hunter did not implement the changes requested by Youth Center employees when Judge Hunter instructed Defendant Bowman in a series of emails to make multiple changes immediately following the employee meeting at the specific request of youth center employees.

105.    Defendant Bowman knew at the time he lied to mislead a jury to convict Judge Hunter that none of the changes she implemented involved her brother Stephen Hunter.

106.    Defendant Bowman lied when he accused Judge Hunter of illegally interfering in her brother's termination when he knew Judge Hunter had not rendered any communications written or orally regarding Stephen Hunter's termination to Defendants or any other employees.

107.    Defendants Bowman, Williams, Kissinger and Wickett knew that restraints at Juvenile Court occurred almost daily at the Youth Center and that many employees and juveniles were often injured, suffering broken arms, shoulders, noses, and other injuries.

108.    Defendants Bowman, Williams and Kissinger knew that Judge Hunter, at the employees' requests, investigated new restraint tactics after many employees expressed fear that they would be injured and lose their employment if or when those injuries left them debilitated.

109.    Defendants Williams, Kissinger and Wickett refused to hire necessary staff and purposefully created an unsafe working environment for Judge Hunter and her staff after multiple individuals forcefully attempted to enter Judge Hunter's chambers, resulting in harm.

110.     Defendant Wickett refused to hire a court administrator, juvenile court officer and other personnel to assist Judge Hunter in violation of the law; and deprived Judge Hunter of the rights provided Judge Hunter by law to hire necessary personnel, when that right had been afforded to every white Judge before Judge Hunter, including Defendant Williams.

111.     Defendant Wickett sent emails through the Hamilton County Court system defaming Judge Hunter and expressing her bias and unwillingness to work for Judge Hunter.

112.     Defendant Wickett refused to follow employment laws or to provide the same services she provided Defendant Williams, depriving Judge Hunter of all rights, benefits and protections afforded every white Judge before Judge Hunter, including Defendant Williams, in violation of the Constitution of the United States and the State of Ohio.

113.     Defendant Williams, Wickett, Kissinger and Bowman knew that Judge Hunter routinely requested complete investigation reports in employee matters brought to her attention by employees, due to Judge Hunter's role as statutory employer of the court.

114.     Defendant Williams, Wickett, Kissinger and Bowman knew that Judge Hunter, as the statutory employer of the Juvenile Court, was directly liable for the actions of all employees when she requested investigation files regarding employee incidents involving Magistrate Roger Bouchard, Probation Officer Tom Lynd, and other court officers and employees.

115.     Defendants Williams, Wickett, Bowman and Kissinger knew that it was Judge Hunter's legal and ethical obligation to be involved in employee matters of the Juvenile Court.

116.     Defendants Williams, Kissinger, Wickett and Bowman knew that Defendant Kissinger initiated written contact with Judge Hunter about her brother Stephen E. Hunter.

117. Defendants Williams, Wickett, Kissinger and Bowman, Croswell and Shiverdecker maliciously and vindictively accused Judge Hunter of interfering in Stephen Hunter's termination when they knew Judge Hunter had not been involved in his termination.

118. Plaintiff Hunter assigned a Magistrate to assist her pursuant to Ohio R.C. Rule 40, in the same manner that multiple Magistrates, including the Chief Magistrate, daily assisted Defendant Williams and other white Judges before her; but Defendant Williams sent Plaintiff Hunter a memo and told her that Magistrates, county employees working for both Judges, could only assist Plaintiff Hunter after court hours, not during normal employment hours, as they did Defendant Williams, in violation of her right to equal protection and treatment under the law.

119. Defendant Williams, Kissinger and Wickett intentionally interfered with Judge Hunter's ability to utilize court resources and personnel to assist her in doing her job as did every white Judge before Judge Hunter, including Defendants Williams.

120. Defendants Williams, Kissinger and Wickett prevented Judge Hunter from utilizing and directing her court budget like every white Judge before her; and allowed Williams to illegally control Judge Hunter's budget and interfere with her statutory duties as Judge.

121. Defendants Bowman, Kissinger, Williams and Wickett retaliated against Judge Hunter after she refused to sign off on paperwork authorizing the hiring of a chief of security that she believed was a violation of employment laws when they only identified one qualified candidate and the one qualified candidate was not as qualified experientially as other candidates.

122. Defendants Bowman, Kissinger, Williams and Wickett retaliated against Judge Hunter after she disciplined Defendant Kissinger for inappropriately interfering in her cases.

123. Defendants Bowman, Kissinger, Williams and Wickett retaliated against Judge Hunter after she took action on employee matters brought to her attention by those employees.

124.    Defendants Bowman, Kissinger, Williams and Wickett retaliated against Judge Hunter after she requested investigation files regarding Magistrate Roger Bouchard after he made inappropriate racial remarks about a young black man during a hearing in one of Judge Hunter's cases and Defendants Wickett, Williams and Kissinger attempted to cover up the investigation from Judge Hunter, a statutory employer of the court, in violation of the law.

125.    Defendants retaliated against Judge Hunter when she began fixing the flawed internal procedures and policies that harmed children and parents, and violated their legal rights.

126.    Within months of taking her office, Defendants Hamilton County and Deters began filing frivolous lawsuits against Judge Hunter, accusing her of actions in one case that was taken by a Magistrate and not Judge Hunter, causing her name and reputation to be tarnished.

127.    Defendant Deters instructed Defendant County to sue Judge Hunter for hiring a court administrator although white judges before her previously hired separate administrators and the law authorized Judge Hunter, as an independent Judge, to hire any necessary personnel.

128.    When Defendant Deters represented Judge Hunter in lawsuits brought by WCPO and the Cincinnati Enquirer, employees under his control pled false facts, then refused to correct the pleadings in an effort to maliciously and vindictively defame Judge Hunter with intent to mislead the First District Court of Appeals and the Ohio Supreme Courts whose reliance on those false pleadings harmed Judge Hunter's name, career and reputation.

129.    Defendants County, Deters and Williams violated the Separation of Powers Clause when they illegally prevented Judge Hunter from hiring necessary personnel.

130.    Defendant Deters' office failed to file answers in 12 lawsuits brought against Judge Hunter, which resulted in default judgments against Judge Hunter.

131.    Defendant Deters answered some lawsuits filed against Judge Hunter in total contradiction to her written advisement and refused to include Judge Hunter's defenses.

132.    Judge Hunter lost the majority of lawsuits filed against her as Judge when Defendant Deters filed inaccurate pleadings or failed to answer complaints as required by law.

133.    Judge Hunter was maliciously and vindictively accused of crimes in retaliation after she filed ethics complaints against: Defendant Deters, and prosecutors Christian Schaefer, James Harper and Charles Lippert after they: misrepresented facts in juvenile court pleadings in violation of the law and ethics; refused to follow routine court orders in Judge Hunter's courtroom; and failed to truthfully answer or answer at all nearly 20 lawsuits filed against her.

134.    Defendant Deters terminated representation of Judge Hunter without notice; left her without legal counsel; then recommended Defendants James Bogen and Firooz Namei to represent her immediately after she filed ethics complaints against him and several prosecutors.

135.    After terminating his representation of Judge Hunter, Defendant Deters illegally filed briefs with the Ohio Supreme Court on Judge Hunter's behalf in response to multiple lawsuits, although Defendants Namei and Bogen had been retained to write those briefs.

136.    Defendant Deters knew when he filed the responses in those lawsuits that he no longer legally represented Plaintiff Hunter and was violating the law when he responded as her counsel while her ethics complaint against him was pending before the Ohio Supreme Court.

137.    Defendant Deters knew that the factual allegations and misrepresentations contained in briefs he submitted to the Ohio Supreme Court in multiple lawsuits filed against Judge Hunter were false and with reckless regard for the truth when Chief Justice Maureen O'Connor specifically relied on those misrepresentations in her rulings against Judge Hunter.

138.     Judge Hunter advised Defendant Deters and prosecutors working at his direction in writing that pleadings were false prior to those briefs being filed and expressly forbade them from pleading said false facts in her defense, but they did it anyway, in violation of her rights.

139.     Defendant Deters, in violation of the law, abused and misused the power of his office to maliciously and vindictively indict Judge Hunter in retaliation after she filed ethics complaints against him and several prosecutors due to their unethical and illegal conduct.

140.     Defendant Deters violated the Separation Clause of the United States Constitution when he maliciously and vindictively accused her of crimes to violate her protection of judicial immunity and usurp her duty and role as an independent jurist.

141.     Defendant Deters, Shiverdecker and Croswell knew at the time they wrongfully accused Judge Hunter of crime that she had not committed any crimes and that any actions undertaken by Judge Hunter were not crimes, but actions the law required her to take as statutory employer of Juvenile Court responsible for ensuring and protecting the functions and operations of the Juvenile Court, including defending lawsuits and investigating incidents brought to her attention that could result in the court or her as judge being liable for employee conduct.

142.     Defendants Deters, knew at the time he wrongfully accused Judge Hunter of crime that many actions he attributed to her were not taken or authorized by Judge Hunter.

143.     Defendants Deters, Kissinger, Shiverdecker or Croswell purposefully, with intent to vindictively and maliciously prosecute Judge Hunter, caused Juvenile Court's software provider ProWare to execute an affidavit that: alleged two entries were backdated; included the dates and times the entries were executed, but intentionally excluded the name of the individual that created the entries in the system which all Defendants knew was not Judge Hunter.

144.    Defendant Deters, with intent to maliciously and vindictively convict Judge Hunter of charges he knew to be false, withheld critical exculpatory evidence in Judge Hunter's criminal trial that would have proved they knew Judge Hunter did not commit the alleged crimes.

145.    Defendant Deters knew that backdating was the practice of Juvenile Court that preceded Judge Hunter's tenure as Judge at the time his office accused Hunter of crimes.

146.    Defendant Deters was aware that retired Juvenile Court Judge Thomas Lipps admitted that backdating documents had been a court practice for years prior to Judge Hunter.

147.    Defendant Deters illegally violated Article III, Section 1 of the United States Constitution when he repeatedly interfered with Judge Hunter's role as in independent jurist.

148.    Defendant Deters illegally violated Article III, Section 1 of the United States Constitution when he repeatedly interfered with the business of the Juvenile Court in order to help Defendant Williams gain unprecedented sole control of the court in violation of the law.

149.    Defendant Deters illegally violated Article III, Section 1 when his office engaged in judge shopping and instructed Juvenile Court employees to switch cases from Judge Hunter to Defendant Williams' docket to achieve a desired outcome in violation of the law.

150.    Defendant Deters recommended his personal defense lawyers Defendants Merlyn Shiverdecker and Scott Croswell as the special prosecutors to pursue an indictment against Judge Hunter although Defendant Deters' office was the chief complainant witness and had a direct interest in the trial outcome in violation of Judge Hunter's rights to a fair process.

151.    Defendants Shiverdecker and Croswell acknowledged publicly that they are personal friends of Defendant Deters and never served as special prosecutors until they were recommended by Defendant Deters to pursue indictments against and prosecute Judge Hunter.

26

152. Defendants Croswell and Shiverdecker made in excess of a half million dollars to prosecute Judge Hunter at the recommendation of their personal client Defendant Deters.

153. Defendants Deters, Shiverdecker, Williams, Kissinger and Croswell intentionally withheld exculpatory evidence in Judge Hunter's criminal trial, which was specifically requested, knowing said evidence would refute criminal allegations they made against her.

154. Defendant Deters committed or attempted to commit extortion when he told multiple sources that he had nothing to do with Judge Hunter being indicted or prosecuted, then subsequently told those same individuals that if Judge Hunter would waive her speedy trial rights, he would request the First District Court of Appeals to not incarcerate her pending the appeal; but when she refused, Defendant Cunningham ordered her to jail with no explanation.

155. Defendant Deters committed or attempted to commit extortion of Judge Hunter when he stated publicly that he had nothing to do with Judge Hunter being prosecuted, but told multiple individuals that the charges against her would be dismissed if she vacated her judgeship.

156. Defendant Deters deprived Judge Hunter of a fair trial when he issued a press release one day before Judge Hunter's trial falsely accusing her of murdering two people with intent to bias the jury and taint her trial to obtain an unlawful conviction, and did; as no less than four jurors admitted that they had seen the negative news coverage and further admitted that it influenced their opinion of Judge Hunter which would interfere with their ability to be impartial.

157. Defendant Deters knew at the time he falsely and recklessly accused Judge Hunter of murder that Judge Hunter had not murdered anyone and did not know nor have any affiliation with those he alleged that she murdered.

158.   Defendant Deters maliciously and vindictively accused Judge Hunter of murder, knowing such statement was false and in reckless regard of the truth when he did so with intent to defame her character and harm her career, name and judicial reputation and did so.

159.   Defendant Deters later refused to release a video of a police officer that killed an unarmed man because he said it would taint the grand jury; but maliciously released a press release falsely accusing Judge Hunter of murdering people one business day before her jury trial;

160.   Defendant Faller filed twelve frivolous lawsuits against Plaintiff Hunter fraudulently alleging she was preventing children from being adopted in the foster care system.

161.   Defendant Faller sued Plaintiff Hunter, but discriminately failed to sue Defendant Williams despite knowing that, according to public records obtained from the Ohio Supreme Court by Plaintiff Hunter's attorney, Jennifer Branch, Defendant Williams had more cases pending beyond Supreme Court guidelines than Plaintiff Hunter when she was sued.

162.   Defendant Faller sued Plaintiff Hunter although Judge Hunter had almost 100 more objection hearings scheduled by clerks on her docket than Defendant Williams, when he discriminately sued Plaintiff Hunter, but refused to sue Defendant Williams.

163.   Upon information and belief, Defendant Faller prohibited assistant public defenders from filing suit against Defendant Williams at the same time that he forced other assistant public defenders to discriminately sue Judge Hunter.

164.   Defendant Faller knew when he sued Judge Hunter that the majority of cases in which he sued Judge Hunter, based on the Form D report and Ohio Revised Code, were in fact not pending beyond deadline when he maliciously and with reckless regard for the truth, sued her, falsely impugning her name, character and reputation as Judge.

165.    Defendant Faller was aware at the time he maliciously and vindictively filed frivolous lawsuits against Judge Hunter that the majority of those cases were not ripe for decision and were not pending beyond Ohio Supreme Court guidelines; but filed such lawsuits with intent to destroy her name, character and reputation as a Judge and did so.

166.    Defendant Faller attempted to exercise control over Judge Hunter in violation of the law when his employee Kim Helfrich sent Judge Hunter a letter demanding to be put back on a case after Judge Hunter replaced Helfrich as GAL due to legal improprieties.

167.    Defendant Faller attempted to control Plaintiff Hunter in violation of the Constitution when he sent her a letter instructing her not to appoint lawyers that his office did not tell her to appoint after Judge Hunter appointed lawyers to take over the caseload of an exiting lawyer, due to the backlog of cases in Juvenile Court caused in part by the Public Defender's Office, other involved entities and intervening factors and not Judge Hunter.

168.    Defendant Faller knew or should have known that when his office assigned the majority of dependency cases to a few attorneys that could not effectively, efficiently or competently handle such caseload, it would and did harm families and created a backlog of cases in Juvenile Court.

169.    Defendant Faller, in bad faith, filed or caused 12 lawsuits to be filed against Judge Hunter knowing that the allegations his office made in the complaints were false when filed.

170.    Defendant Faller testified during Judge Hunter's criminal trial that he imposed a superficial deadline on her to decide cases he demanded she rule in based on no legal timeframe that he could attest to; and further testified that he did not inform Judge Hunter what cases he alleged were out of time prior to suing her even when she asked for the cases to prevent the suits.

171.    Defendant Faller was aware that the majority of Judge Hunter's cases were not pending beyond timeframe when he falsely accused her of dereliction in court pleadings with malicious intent to defame Judge Hunter's name, character and reputation and did so.

172.    Defendant Faller filed lawsuits against Judge Hunter for cases that they knew were in the Court of Appeals at the time those lawsuits were filed against Judge Hunter and she was void of any jurisdiction to rule in those cases.

173.    Defendant Faller filed lawsuits against Judge Hunter despite knowing that parties in some cases had requested continuances to introduce new evidence in the case and those arguments had not yet been argued before Judge Hunter, preventing Judge Hunter from ruling.

174.    Defendant Faller filed lawsuits against Judge Hunter knowing that supervening issues involving custody claims by parents needed to be resolved before Judge Hunter could rule, yet filed lawsuits in bad faith against Hunter.

175.    Defendant Faller was aware when he sued Judge Hunter that the majority of dependency cases had been lingering in juvenile court for many years prior to Judge Hunter becoming Judge, and while those cases were commenced under those white judges, he did not sue any white Judges before Judge Hunter when they failed to rule within a 120-day timeframe.

176.    Defendant Hendon was a juvenile Judge before Judge Hunter and knew that there was a systemic backlog of cases in Juvenile Court before Judge Hunter ever became Judge.

177.    Defendant Hendon knew or should have known that Juvenile Court followed a form D report to determine the time frame to rule in cases when she arbitrarily and errantly ruled that Judge Hunter failed to incorporate a law that applied to motions and not Objections at the time she held Judge Hunter to a different standard than herself, as well as, a different standard than all other white Juvenile Court Judges before Judge Hunter.

178. Defendant Hendon should have known, had she properly reviewed the court cases and docket before granting default judgments against Judge Hunter, that one case was in the Court of Appeals, when the writs were filed in bad faith, depriving Hunter of jurisdiction.

179. Defendants Hendon, Cunningham, Hildebrandt, Dinkelacker and DeWine should have known, had they properly reviewed the procedural postures of each writ that Judge Hunter could not rule in cases where decisions had already been rendered and should not have granted default judgments against Hunter, harming her judicial reputation and career.

180. Defendant Hendon knew that Judge Hunter was unduly burdened with cases from prior judges, including some left that arose under Defendant Hendon, yet accused Hunter in court records of being derelict and made such reckless statements with intent to harm Judge Hunter's judicial career and to cover up Defendant Hendon's history in prior cases.

181. Defendant Hendon acted dually as an Ohio Appeals Court Judge and a Visiting Judge to the Juvenile Court, presiding over Judge Hunter's cases in her absence and simultaneously presiding over cases appealed from the Juvenile Court to Court of Appeals, resulting in a conflict of interest that violates the public's trust and confidence in the judicial system.

182. Defendants Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt made derogatory comments in court pleadings with malicious intent to harm Hunter's judicial reputation; and to curtail her ability to interpret the law in violation of the Constitution of the United States, treating her differently than white Judges before her; and as a result deprived children that appeared before Judge Hunter equal protection and due process under the law.

183. Defendants Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt accused Judge Hunter of routinely denying access to her courtroom in reckless disregard for the truth.

184.   Defendants Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt relied solely on the pleadings written and prepared by Defendant Deters' office and routinely denied Judge Hunter the right to defend said suits, in violation of equal protection and due process.

185.   Defendants Deters, Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt knew that the Hamilton County Juvenile Court local rules of practice were in effect at the time Judge Hunter issued rulings that comported to those pre-existing practices and court rules when they vindictively and maliciously accused her of not following the law with intent to harm Hunter's judicial career and reputation; and did so.

186.   Defendants Deters, Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt maliciously and vindictively held Judge Hunter in contempt after they falsely stated in a court record that Judge Hunter did not follow a court order when they knew such statement was false as Judge Hunter complied with the four corners of the document she was ordered to comply.

187.   Upon information and belief, Defendants Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt knew or should have known that the media and juvenile court in violation of the law treated African-American children disparately and discriminately.

188.   Said Defendants violated Judge Hunter's due process rights to interpret the law on behalf of all children, by wrongfully subjecting her rulings, pleadings and judicial actions to arbitrary review and causing black children to be treated differently in violation of their due process and equal protection under the law pursuant to the Fourteenth, Fifth and Eighth Amendments.

189.   Defendants Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt denied Judge Hunter equal protection and due process when they struck down pleadings filed by Judge

Hunter's lawyers, denying her right to legal counsel despite knowing that Defendants Deters, Bogen and Namei recklessly failed to answer 12 lawsuits filed against Judge Hunter.

190.    Defendants Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt knew that Defendant Deters, Bogen and Namei failed to answer 12 lawsuits filed against Judge Hunter when they *sua sponte* granted default motions against Judge Hunter after no answers were filed in the lawsuits brought against Judge Hunter in her official capacity as Judge of Juvenile Court in violation of Judge Hunter's constitutional rights.

191.    Defendants Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt knew that it was illegal and a violation of her constitutional rights to bar Judge Hunter from having independent counsel to represent her in about 20 lawsuits brought against Judge Hunter.

192.    Defendants Hendon, DeWine, Cunningham, Dinkelacker, Hildebrandt and Meyers knew that when Hendon's son-in-law Defendant Deters brought some of those lawsuits against Hunter, the law and a clear conflict of interest prohibited Defendant Deters from representing Judge Hunter and from hand picking counsel to represent Judge Hunter.

193.    Defendant Meyers further violated Judge Hunter's Fifth Amendment rights to due process when she appointed Defendant Deters' personal defense lawyers Defendant Shiverdecker and Croswell as special prosecutors to investigate and subsequently indict Judge Hunter at the request and recommendation of Defendant Deters.

194.    Defendant Meyers knew at the time she appointed Shiverdecker and Croswell that they had never served as special prosecutors.

195.    Defendant Meyers knew that special prosecutors had routinely been assigned from outside Hamilton County, like Columbus and Dayton, and that special prosecutors were typically retained when the Hamilton County Prosecutor's office was clearly conflicted.

196.    Defendant Meyers knew or should have known that it was a violation of Judge Hunter's constitutional rights when she appointed lawyers recommended by Defendant Deters as special prosecutors to indict Judge Hunter after Defendant Deters made the allegations against Judge Hunter, which resulted in the indictment; and those Defendant lawyers Shiverdecker and Croswell were the personal defense and divorce lawyers of Deters.

197.    Defendant Meyers provided an affidavit that Defendant Deters selected the special prosecutors despite knowing that Defendant Deters routinely disparaged Judge Hunter in the media and his office made the allegations central to the criminal charges brought against Judge Hunter when she allowed Defendant Deters to hand pick the special prosecutors.

198.    Defendants Meyers and the Defendant County knew that the laws were not followed in the illegal appointment and retention of Defendants Croswell and Shiverdecker as special prosecutors.

199.    Defendants Croswell and Shiverdecker knew before charging Judge Hunter with crimes that Judge Hunter did not backdate the documents for which she was charged with crimes.

200.    Defendants Croswell and Shiverdecker told several attorneys, including Plaintiff's attorneys, prior to indicting Judge Hunter, that they knew that backdating was a practice of Juvenile Court that existed prior to Judge Hunter, but only charged Judge Hunter with crimes.

201.    When Judge Hunter, in her defense, attempted to admit Miller's employment records as evidence to prove that she was not at work during many of the days she claimed to have given Judge Hunter a document, Defendants Nadel, Shiverdecker and Croswell prevented that information from being presented to the jury in violation of Brady laws.

34

202. Defendants James Bogen and Defendant Namei had no experience in juvenile court law to defend Plaintiff Hunter when they failed to file answers to 12 Writ cases filed against Plaintiff, resulting in default judgments against Judge Hunter. Such default Judgments harmed Judge Hunter's reputation as a Judge.

203. Defendants Deters, County, and Meyers knew that Defendants Bogen and Namei specialized in criminal law and immigration law, respectively, when they recklessly and negligently retained Namei and Bogen to defend Judge Hunter over her objection.

204. Defendant County retained highly competent outside lawyers in Columbus to represent Defendant Williams when he was subsequently sued, like Judge Hunter, treating Judge Hunter contemptuously and disparately in violation of her right to equal protection.

205. Judge Hunter filed notices of appeal to protect Juvenile Court from harm, only after Defendant Deters, Bogen and Namei failed to answer lawsuits; but was vindictively charged with theft in office by Defendants Croswell and Shiverdecker for protecting the court.

206. Defendants Bogen and Namei failed to answer 12 writs filed against Judge Hunter.

207. Defendants Bogen and Namei refused to defend Judge Hunter but took money from the County knowing that they had not answered lawsuits filed against her.

208. Judge Hunter had provided in writing all of the facts necessary for Defendants Bogen and Namei to defend lawsuits against her, but they recklessly refused to answer the writs.

209. Defendants Deters, Bogen and Namei intentionally and/or negligently failed to answer all of the writs filed against Judge Hunter because they knew that the answers would have proven that the writs were fraudulently and frivolously filed against Hunter and would have been dismissed.

35

210. In violation of their legal and ethical duties, Defendants Bogen and Namei purposefully failed to file answers to 12 writs because the answers would have demonstrated that Defendant Deters first negligently and recklessly failed to answer the lawsuits; and the answers would have proven that the writs were fraudulently and frivolously filed against Hunter and would have been dismissed.

211. Defendants Bogen and Namei refused to provide Judge Hunter's legal file upon request in violation of the law.

212. Defendants Bogen and Namei lost every case filed against Judge Hunter, then refused to appeal those cases to the Ohio Supreme Court in violation of the law and Judge Hunter's guaranteed right to appeal because the action arose in the First District Court of Appeals.

213. Judge Hunter filed notices of appeals in all of the lawsuits filed against her as Judge, that resulted in criminal charges, only after Defendants Bogen and Namei refused her repeated instruction to appeal all of the cases they lost when they recklessly failed to answer the lawsuits resulting in default judgments, irreparably harming Judge Hunter's name and reputation.

214. Upon information and belief, Defendants Bogen and Namei followed Defendant Deters' advice in lawsuits filed against Judge Hunter, although Defendant Deters terminated his representation of Judge Hunter and was thereby legally barred and conflicted from representing Judge Hunter.

215. Upon information and belief, Defendant Bogen told multiple people that he owed Defendant Deters for giving him Judge Hunter's cases to defend.

216. Defendants Bogen and Namei accepted money from Hamilton County for work they professed to do on behalf of Judge Hunter, but in fact did not do, in violation of the law.

217.    Defendants Bogen and Namei had no experience in Juvenile Court when they were recommended by Defendant Deters to represent Judge Hunter in her official capacity.

218.    Defendant Norbert Nadel made malicious false statements regarding Judge Hunter's actions as a Judge, violating her constitutional rights and depriving her of a fair trial in violation of the law.

219.    Defendant Nadel vindictively and maliciously made inflammatory, false statements regarding Judge Hunter despite: never being in Judge Hunter's courtroom; never seeing any tape of her videotaped hearings; and never presiding over any Juvenile Court cases.

220.    Defendant Nadel allowed the prosecutors in open court to publicly abuse, dehumanize, terrorize and victimize Judge Hunter during courtroom proceedings in violation of the law.

221.    Defendant Nadel allowed the media throughout her trial in his courtroom to publicly abuse, dehumanize, terrorize and victimize Judge Hunter during courtroom proceedings in violation of the law.  One reporter tweeted how close he was to Judge Hunter's face in the courtroom violating her personal space and right to be protected from assault and harm.

222.    Defendant Nadel systematically excluded black jurors from Judge Hunter's jury.

223.    Defendant Nadel wrongfully dismissed a potential black juror after Defendants Croswell and Shiverdecker made false accusations that Judge Hunter hugged a potential black juror in the courtroom.

224.    Defendant Nadel wrongfully relied on the misrepresentations of Croswell and Shiverdecker in violation of *Baston* as an excuse to eliminate another black juror when Defendants knew that live camera footage could have been reviewed to dispel the false allegation after the white county employee who made the false allegation said it happened in open court.

225. At the time Defendant Nadel dismissed the potential black juror, he knew that a white employee of the Hamilton County Treasury Department made the false accusation and that Hamilton County had a direct interest in the outcome of Judge Hunter's trial.

226. Defendant Nadel allowed Defendants Croswell and Shiverdecker to call Judge Hunter a liar, fool and other racially derogatory names to illegally influence the jury.

227. Defendant Nadel knew that the jury was stacked with colleagues of Juvenile Court personnel, neighbors of witnesses and judges, friends of John Williams, lawyers, an employee of WCPO, the station that sued her and daily trashed Judge Hunter's name; and the wife of a lawyer that worked for the law firm that represented WCPO against Hunter, who expressed a public distrust and disdain for pastors, knowing Judge Hunter is a pastor.

228. Defendant Nadel refused to recuse himself despite receiving campaign contributions from Defendants Deters, Croswell and Shiverdecker.

229. Defendant Nadel knew that Defendant Deters received campaign contributions from Defendants Shiverdecker and Croswell and knew they were Defendant Deters' lawyers.

230. Defendant Nadel appointed Sandra Kirkham as the jury foreperson to help the Defendants Shiverdecker and Croswell influence the jury in violation of the law.

231. Upon information and belief, Defendant Nadel was handpicked to preside over Judge Hunter's trial and shared he would preside over her trial before Judge Hunter was indicted.

232. Upon information and belief, Defendants Deters, Nadel, Shiverdecker and Croswell knew the verdict in Judge Hunter's trial before it was published in violation of the law.

233. Upon information and belief, another Judge shared the verdict in Judge Hunter's trial before it was published after it was shared by a neighbor juror in violation of the law and Defendants Deters, Nadel, Shiverdecker and Croswell knew the verdict was illegally shared.

234.    As a direct and proximate result of the foregoing Defendants' actions, Plaintiff has suffered physical, mental and emotional harm as a result of these unlawful actions.

### FIRST CAUSE OF ACTION-CIVIL RIGHTS VIOLATION (42 U.S.C. § 1983)

235.    Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

236.    Plaintiff, Judge Hunter has a constitutional right to due process, equal protection under the law and a right to her health, reputation, wages and benefits.

237.    Plaintiff was deprived of clearly established rights secured by the Constitution and laws of the United States, being without limitation, those rights secured under the Fourth, Sixth and Fourteenth Amendments, by one or more foregoing Defendants acting under color of state law.

238.    Acting under color of law, one or more of the foregoing Defendants deprived Plaintiff Hunter of the rights, privileges, and immunities secured to her by the United States Constitution by their intentional actions and/or omissions, and enforced under 42 U.S.C. §1983, including without limitation: intercepting personal and judicial emails; withholding and/or denying access to her legal files; failing to disclose exculpatory evidence; failure to impanel an impartial jury; falsifying records; falsely accusing, charging and prosecuting Judge Hunter when they knew she had not committed any criminal offenses; subjecting her to grossly different and unprecedented case management and disciplinary standards than her predecessors or other white judges when such actions were unsupported by law or policy; purposefully changing laws, rules and policies with respect to Judge Hunter; failure to effectively defend and assist Judge Hunter in nearly 20 lawsuits filed against her; and using their positions to inflict severe emotional distress

on Judge Hunter and create a hostile work environment by an unequal application of the laws, rules, policies and procedures governing the Hamilton County Juvenile Court.

239.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered harm and incurred damages.

## SECOND CAUSE OF ACTION (PRIVACY ACT/FREEDOM OF INFORMATION ACT DENIAL OF ACCESS TO RECORDS

240.    Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

241.    On May 21, 2014, Judge Hunter sent a letter addressed to Defendant Kissinger at Juvenile Court requesting copies of all of her emails and court proceedings.

242.    On May 22, 2014, Defendant Kissinger responded that he received the request.

243.    On June 6, 2014 Defendants Williams and Kissinger denied the request for all emails between Plaintiff Hunter and staff in violation of the law, although Defendants Williams and Kissinger had supplied Plaintiff's emails to others when immediately requested.

244.    On March 11, 2015, Plaintiff Hunter sent a request for emails created or received by Judge Hunter to Defendant Williams addressed to his email at the Juvenile Court.

245.    On March 13, 2015, an employee of Juvenile Court at Defendant Williams' direction denied Judge Hunter's request for her personal emails, although Defendant Williams unlawfully provided Judge Hunter's emails, mail and tapes to others at their immediate request.

246.    Judge Hunter has exhausted all required and available administrative remedies.

247.    Judge Hunter has a legal right under the Privacy and Freedom of Information Acts to obtain the information she seeks, and there is no legal basis for the denial by Defendants Kissinger and Williams of said request.

248. Judge Hunter has been irreparably harmed by the denial of her requests by Defendants for emails and other records she requested that contain information that prove she did not commit crimes alleged of Defendant; and Defendants illegally denied her request to further their malicious and vindictive intent to prosecute Plaintiff Hunter in violation of the law.

### THIRD CAUSE OF ACTION- BREACH OF CONTRACT AND /OR PROMISSORY ESTOPPEL

249. Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

250. Defendants Hamilton County, Williams, Kissinger and Wickett promulgated express and written statements of policies, practices and procedure, which it provided, and disseminated to all of its employees, including Plaintiff Hunter.

251. Defendants represented in writing that they treated both Defendant Williams and Plaintiff Hunter equally as statutory employers of Juvenile Court.

252. At all relevant times, Plaintiff Hunter understood and reasonably relied on the aforementioned policies and procedures to her detriment and harm, both pecuniary and otherwise.

253. Defendants' conduct was willful and wanton, and Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available at law.

### FOURTH CAUSE OF ACTION -DEFAMATION

254. Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

255.    Defendants Bowman, Williams, Wickett, Shiverdecker and Croswell falsely accused Judge Hunter of supplying medical or and/or any confidential records to her brother Stephen Hunter when they knew that accusation was false and in reckless regard of the truth.

256.    Said Defendants intentionally, knowingly and/or recklessly published or caused to be published these false statements through the media where such statements were published, republished, circulated and/or otherwise disseminated in the newspaper; television; magazines; legal publications; social media, blogs and online publications all over the world. The damages are irreparable.

257.    All Defendants' actions were in reckless disregard of the truth.

258.    Defendants' oral and written statements were a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

259.    Because the above-named Defendants' conduct toward Plaintiff was improperly motivated and was intentional, willful and wanton, Plaintiff is entitled to punitive exemplary damages in addition to compensatory damages.

260.    Defendants Faller, Deters and Hamilton County abused their power when they filed frivolous lawsuits against Plaintiff Judge Hunter, but did not file lawsuits against Defendant Williams in violation of her rights to equal protection and due process under the law.

261.    As a direct and proximate cause of Defendants' publication of defamatory statements, Plaintiff has suffered and incurred damages.


**FIFTH CAUSE OF ACTION-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

262.    Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

42

263. Defendants, by and through their agents, have wrongfully and negligently caused Judge Hunter to suffer severe emotional distress under the stigma of being falsely accused and wrongfully convicted of a crime while holding a judicial office.

264. Defendants continue to inflict severe emotional distress on Judge Hunter through their baseless criminal prosecutions, charges, misrepresentations and other actions, and denial of due process and equal protection under the law, which are ongoing.

265. As a direct and proximate result of Defendants' actions set forth herein, Plaintiff has suffered and incurred damages.

## SIXTH CAUSE OF ACTION-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

266. Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

267. Defendants, by and through their agents, have wrongfully and intentionally caused Judge Hunter to suffer severe emotional distress under the stigma of being falsely accused and wrongfully convicted of a crime while holding a judicial office.

268. Defendants continue to inflict severe emotional distress on Judge Hunter through their baseless criminal prosecutions, charges, persecution, misrepresentations and other actions, and denial of due process and equal protection of the law, which are ongoing.

269. As set forth herein, Plaintiff was subjected to a pattern of discrimination and misconduct based, in whole or in part, her race.

270. At all relevant times, the above named Defendants knew or should have known that their allegations against Plaintiff were false.

271. The above-named Defendants' actions towards Plaintiff are evidence of a pattern of race discrimination, which further constitutes extreme and outrageous conduct.

272. The conduct of the above named Defendants was outrageous in character and extreme in degree, and went beyond all possible bounds of decency in a civilized society.

273. The extreme and outrageous conduct by Defendants was done in a willful and wanton manner and constituted a disregard for the rights of Plaintiff.

274. As a direct and proximate result of the above-named Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress.

275. Because the Defendants' extreme and outrageous conduct toward Plaintiff was improperly motivated and was intentional and wanton, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages.

## SEVENTH CAUSE OF ACTION-MALICIOUS PROSECUTION-42 U.S.C. § 1983

276. Plaintiff Judge Hunter incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

277. Defendants Deters, Shiverdecker and Croswell prosecuted or caused to be prosecuted Plaintiff Judge Hunter under false and malicious pretenses.

278. Defendants Deters, Shiverdecker and Croswell prosecuted or caused Plaintiff to be prosecuted for actions they knew she had not committed or that they knew were committed by others before they maliciously and vindictively prosecuted Judge Hunter.

279. As a direct and proximate result of Defendants' actions set forth herein, Plaintiff has suffered harm and incurred damages.

## EIGHTH CAUSE OF ACTION-MALICIOUS ABUSE OF PROCESS

280.　Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

281.　Defendants maliciously used a legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.

282.　At the initiation of Defendant Deters, criminal charges were filed against Judge Hunter on or about January 10, 2014, and again in February 2015 by Defendants Shiverdecker and Croswell. These charges are currently pending in Hamilton County, Ohio.

283.　Defendants Deters, Shiverdecker, Croswell and Hamilton County abused their power when they maliciously and vindictively charged Judge Hunter with crimes that they knew she had not committed and possessed evidence under their control that proved she did not commit, but misused their positions and abused their power to unconstitutionally deprive and defraud Judge Hunter of her career, family, freedom, life, liberty and happiness.

284.　Defendant County is otherwise liable for the conduct of Defendants Deters, Shiverdecker and Croswell pursuant to the theories of ratification, respondent superior, agency and/or implied agency.

285.　At all relevant times, the above-named Defendants intended to and did, in fact, use the aforementioned criminal process for self-serving and improper reasons and motives, and to otherwise obtain a collateral benefit from the criminal process.

286.　The above-named Defendants' abuse of the Hamilton County criminal process was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

287. As a direct and proximate result of Defendants' conduct, which was improperly motivated, intentional, willful and wanton, Plaintiff has been harmed and is entitled to punitive, exemplary damages in addition to compensatory damages.

## NINTH CAUSE OF ACTION-RETALIATION R.C 4112

288. Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

289. Defendants accused Plaintiff of crimes after she filed ethics complaints against the Prosecutors Office for misconduct in her courtroom.

290. Defendants accused Judge Hunter of crimes after she reported the filing of false case data by the Hamilton County Juvenile Court to the Ohio Supreme Court.

291. All of the Defendants named herein made false accusations against Judge Hunter when she began to expose the violations of law occurring within Juvenile Court.

292. Judge Hunter learned that Defendants were treating children differently based on race and recommended black children be locked up when the Hillcrest beds were low and retaliated against Judge Hunter when she refused to detain children in violation of the law.

293. But for Plaintiff's ethics complaints, reporting of the disparate treatment of black children in the Juvenile Court system and other matters, Plaintiff would not have suffered adverse employment actions in retaliation for her lawfully protected activity.

294. The unlawful retaliation would not have occurred absent the wrongful actions of Defendants.

295. As a direct and proximate result of Defendants' conduct, Plaintiff has been harmed and suffered damages.

46

**TENTH CAUSE OF ACTION-UNLAWFUL DISCRIMINATION** (R.C. 4112.02)

296.    Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

297.    At all times relevant, Defendants, their agents and employees, engaged in a practice of intentional discrimination based on race against Plaintiff adversely affecting her employment, including but not limited to, wrongfully harassing Plaintiff and causing her to be wrongfully suspended in violation of R.C. 4112.02 and 4112.99 and 42 USC 1983.

298.    Plaintiff Hunter is the first African-American Judge of the Hamilton County Juvenile Court in its 115-year history, and was treated differently in the terms, conditions and privileges of her employment and/or elected position than every white judge before her.

299.    Plaintiff Hunter was treated differently than all elected officials and employees when she was indicted, prosecuted and suspended for alleged conduct that when committed by white elected officials and employees did not result in indictments, prosecution and suspension.

300.    As a direct and proximate result of Defendants' conduct, Plaintiff has been harmed and suffered damages.

**ELEVENTH CAUSE OF ACTION-MALPRACTICE**

301.    Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

302.    Defendants Deters, Bogen and Namei negligently failed to file answers to 12 lawsuits filed against Judge Hunter; and filed responsive pleadings with facts known to be false

in each of the other lawsuits brought against Plaintiff Hunter in clear violation of the law, their ethical duties and in violation of her right to receive effective assistance of counsel.

303.    As a direct and proximate result of Defendants' actions, Plaintiff has been harmed and suffered damages.

## TWELTH CAUSE OF ACTION-VIOLATION OF FOURTH AMENDMENT

304.    Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

305.    The Fourteenth and Fifth Amendments to the United States prohibit the deprivation of a person's life, liberty or property without due process of law; and prohibit the denial of equal protection of the laws.

306.    Defendants acting under the color of law, worked a denial of Judge Hunter's rights, privileges or immunities secured by the United States Constitution or by Federal law, to wit, took actions that violated Plaintiff Judge Hunter' rights to be free from unlawful search, seizure, arrest, confinement by depriving Judge Hunter of her liberty without due process of law, by taking her into custody and holding her against her will after she was issued a summons and released on an OR bond; by making an unreasonable search and seizure of her property without due process of law, by conspiring for the purpose of impeding and hindering the due course of justice with intent to deny Judge Hunter equal protection of laws; by refusing or neglecting to prevent such deprivations and denials to Plaintiff, thereby depriving Plaintiff of her rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

307. As a direct and proximate result of Defendants' actions, Plaintiff has been harmed and suffered damages.

## THIRTEENTH CAUSE OF ACTION-VIOLATION OF SIXTH AMENDMENT

308. Plaintiff Hunter incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

309. Defendants Hamilton County, Deters, Nadel, Shiverdecker and Croswell denied Judge Hunter the right to a fair trial and impartial jury by failing to follow the laws in both the grand jury and petit jury process.

310. Members and/or family members of the grand jury panel posted false and defamatory information about Judge Hunter on Facebook in violation of the law.

311. Defendants knowingly violated all the laws regarding jury selection in the State of Ohio and in the United States of America with malicious and vindictive intent to falsely convict.

312. As a direct and proximate result of Defendants' actions, Plaintiff has been harmed and suffered damages.

## FOURTEENTH CAUSE OF ACTION-VIOLATION OF 42 U.S.C. § 1983: DETENTION AND CONFINEMENT

313. Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

314. As a direct and proximate result of their concerted unlawful and malicious detention and confinement of Judge Hunter, Defendants deprived her of both her right to liberty without due process of law and her right to equal protection of the laws, and the due course of

justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §1983.

315.    As a direct and proximate result of Defendants' actions, Plaintiff has been harmed and suffered damages.

### FIFTEENTH CAUSE OF ACTION-HOSTILE WORK ENVIRONMENT

316.    Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

317.    Defendants County, Williams, Wickett, Bowman and Kissinger intentionally created an environment that was permeated with racially discriminatory intimidation, ridicule and insult that was severe, pervasive and hostile toward Plaintiff.

318.    Plaintiff Judge Hunter was informed by multiple employees of Defendant County that they had been poisoned against Judge Hunter before she was sworn in and were shocked to learn that she was nothing like the person they had been misled to think she was by Defendants whose intent was to vindictively and maliciously create a hostile work environment and did.

319.    Judge Hunter during a visit to the Youth Center discovered letters posted about Judge Hunter on the bulletin board in the operation room in violation of the law and rules. The Youth Center was under the control of Defendants Bowman, Kissinger and Williams.

320.    Defendant County, Deter and Williams, among other named Defendants, unlawfully wielded control and authority over other court employees and created a hostile work environment.

321.    Defendant County also negligently failed to prevent harassment committed by other county employees and are liable for the harassing and harmful conduct.

322. As a direct and proximate result of Defendants' conduct, Plaintiff has been harmed and suffered damages.

## SIXTEENTH CAUSE OF ACTION: VIOLATIONS OF 42 U.S.C. § 1985: CONSPIRACY

323. Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

324. As a direct and proximate result of their concerted unlawful and malicious conspiracy of all Defendants, Plaintiff was deprived of her due process and equal protection rights in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §§ 1983 and 1985.

325. As a direct and proximate result of Defendants' actions, Plaintiff has been harmed and suffered damages.

## SEVENTEENTH CAUSE OF ACTION VIOLATIONS OF 42 U.S.C. 1986: REFUSING OR NEGLECTING TO PREVENT

326. Plaintiff incorporates by reference and realleges each and every allegation within this complaint as if set forth herein.

327. At all times relevant to this Complaint, Defendants were acting under the direction and control of Defendant County.

328. Acting under color of law and pursuant to official policy or custom, Defendant County knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant Deters, Shiverdecker and Croswell in their official duties to refrain from:

**(a)** unlawfully and maliciously harassing an elected Judge who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

**(b)** unlawfully and maliciously arresting, imprisoning and prosecuting an elected judge who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

**(c)** conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of Ohio; and

**(d)** otherwise depriving Plaintiff of her constitutional and statutory rights, privileges, and immunities.

329.    Defendant County had knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.  Defendant County had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

330.    Defendant County directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants Deters, Shiverdecker and Croswell and others under their control heretofore described.

331.    As a direct and proximate cause of the negligent, reckless and intentional acts of Defendants, Plaintiff suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of her constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. sec. 1983.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendant as follows:

    A. Compensatory damages in an amount to be shown at trial;

    B. Punitive Damages in an amount to be shown at trial;

    C. Costs incurred in this action and reasonable attorney fees under 42 U.S.C. § 1988;

    D. Prejudgment interest; and

    E. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Tracie M. Hunter, Judge
Pro Se
PO Box 32325
Cincinnati, Ohio 45232
(513) 662-6247

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims triable by a jury.

Tracie M. Hunter, Judge
Pro Se