UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HON. TRACIE M. HUNTER,
    Plaintiff,

    vs.

HAMILTON COUNTY, *et al.*,
    Defendants.

Case No. 1:15-cv-540
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Tracie Hunter, a suspended judge of the Hamilton County, Ohio Juvenile Court, brings this pro se civil rights action against Hamilton County, Ohio and numerous other defendants under 42 U.S.C. § 1983; the Privacy Act of 1974, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552; 42 U.S.C. § 1985; 42 U.S.C. § 1986; and state and common law. (*See generally* Doc. 1). This matter is before the Court on the motion to dismiss of defendants Scott Croswell and Merlyn Shiverdecker, the special prosecutors for Hamilton County (Doc. 37), plaintiff's memorandum in opposition (Doc. 48), and defendants' reply memorandum (Doc. 51).

## I. Background

Plaintiff is an African American female who was elected as a judge of the Hamilton County, Ohio Juvenile Court in November 2010. However, plaintiff was not seated as a judge until May 25, 2012, following a lawsuit in this Court over the counting of provisional ballots. *See Hunter v. Hamilton County Board of Elections*, Case No. 1:10-cv-820 (S.D. Ohio).[1]

In 2014, plaintiff was indicted in the Hamilton County Court of Common Pleas on nine felony counts: two counts of tampering with evidence, two counts of forgery, two counts of having an unlawful interest in a public contract, two counts of theft in office, and one count of

---

[1] Federal courts may take judicial notice of proceedings in other courts of record. *See Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82 83 (6th Cir. 1969)). *See also National Union Fire Ins. Co. v. VP Bldgs., Inc.,* 606 F.3d 835, 839 n.2 (6th Cir. 2010); *Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999).

misuse of a credit card. *See State of Ohio v. Tracie Hunter*, Case Nos. B 1400110 and B1400199.

Plaintiff was convicted on one count of having an unlawful interest in a public contract. The jury

was unable to agree on a unanimous verdict as to the remaining counts and a mistrial on those counts

was declared. Plaintiff's retrial on the remaining counts was scheduled to begin January 19, 2016.

On the first day of plaintiff's retrial, the prosecuting attorneys dismissed the remaining charges

against plaintiff. *Id.; see also State of Ohio v. Tracie M. Hunter*, Case No. B 1501273.

Meanwhile, plaintiff appealed her conviction for having an unlawful interest in a public

contract to the First District Ohio Court of Appeals. The Court of Appeals affirmed plaintiff's

conviction. *See State v. Hunter*, Nos. C-140684, C-140704, C-140717, 2016 WL 196972 (Ohio Ct.

App. Jan. 15, 2016). Plaintiff then filed an appeal with the Ohio Supreme Court, which remains

pending. Plaintiff has been suspended from the practice of law, *see In re Hunter*, 21 N.E.3d 1070

(Ohio 2014), and is disqualified from acting as a judge. *See In re Disqualification of Hunter*, 1

N.E.3d 432 (table) (Ohio 2014).

On August 18, 2015, plaintiff commenced this federal court action against 21 defendants

alleging violations of her constitutional and state law rights. The defendants are Hamilton County,

Ohio officials, former and current judges, the two special prosecutors from her criminal trial, and two

court-appointed lawyers who were hired to defend plaintiff in lawsuits filed against her during her

tenure as a juvenile court judge. The complaint alleges causes of action for civil rights violations,

breach of contract, defamation, negligent and intentional infliction of emotional distress, malicious

prosecution, retaliation, unlawful discrimination, and conspiracy, among others.

As it relates to the instant motion to dismiss, the complaint alleges the following against the

defendant special prosecutors Croswell and Shiverdecker:

- Defendants Croswell and Shiverdecker knowingly lied when they told the jury at plaintiff's criminal trial that Stephen Hunter, plaintiff's brother, was hired by the juvenile court as a personal favor to plaintiff (Doc. 1, ¶ 25).

- Defendants Croswell and Shiverdecker read in open court and entered into

evidence mail addressed to plaintiff at the juvenile court that she never received nor knew existed (*Id.*, ¶ 60).

- Defendants Shiverdecker and Croswell compelled Lisa Miller, plaintiff's juvenile court case manager, to testify falsely and withheld exculpatory evidence from plaintiff (*Id.*, ¶¶ 76-77, 153).

- Defendants Shiverdecker and Croswell were aware that defendant Constance Murdock, the Juvenile Court Executive Director of Case Management, and/or Lisa Miller at Murdock's direction altered plaintiff's rulings and judicial entries without her consent, then falsely accused plaintiff of backdating two judicial entries for which she was charged with a crime; defendants Shiverdecker and Croswell falsely alleged there were only two backdated judicial entries when there were over 75 entries backdated by juvenile court case management staff and other employees, establishing that backdating was a practice of the Juvenile Court; defendants' actions were done maliciously and vindictively to prosecute plaintiff in violation of the law with intent to harm her career and to defame her name and reputation (*Id.*, ¶¶ 75-76, 91, 94).

- Defendants Shiverdecker and Croswell knew that false accusations were made against plaintiff and that the juvenile court's computer software program revealed that plaintiff did not create the documents (*Id.*, ¶ 95).

- Defendants Shiverdecker and Croswell falsely accused plaintiff of supplying medical and/or confidential records to her brother, former juvenile corrections officer Stephen Hunter knowing the accusation to be false (*Id.*, ¶¶ 98, 255).

- Defendants Shiverdecker and Croswell falsely accused plaintiff of interfering with Stephen Hunter's termination when they knew plaintiff had not been involved and had received information that Mr. Hunter did not wish to be reinstated to his juvenile court job (*Id.*, ¶¶ 99, 117).

- Defendants Shiverdecker and Croswell knew at the time they accused plaintiff of the commission of crimes that the actions she took were not crimes, but within her statutory duties as a juvenile court judge-employer, including defending lawsuits and investigating incidents brought to her attention by juvenile court employees (*Id.*, ¶ 141).

- Defendants Shiverdecker and Croswell "purposefully, with intent to vindictively and maliciously prosecute [plaintiff], caused Juvenile Court's software provider ProWare to execute an affidavit that alleged two entries were backdated; included the dates and times the entries were executed, but intentionally excluded the name of the individual that created the entries in the system which all Defendants knew was not [plaintiff]." (*Id.*, ¶ 143).

- Defendants Shiverdecker and Croswell made in excess of a half million dollars to prosecute plaintiff and publicly acknowledged they are personal friends of

defendant Joseph Deters, the Hamilton County Prosecutor, and had never served as special prosecutors until recommended by Deters (*Id.*, ¶¶ 151-152).

- Defendants Shiverdecker and Croswell knew before charging plaintiff with crimes that she did not backdate the documents which formed the basis of a criminal charge (*Id.*, ¶ 199).

- Defendants Shiverdecker and Croswell told several attorneys, including plaintiff's attorneys, prior to indicting plaintiff that they knew that backdating was a practice of juvenile court that existed prior to plaintiff's tenure, but plaintiff was the only one charged with a crime (*Id.*, ¶ 200).

- Defendants Shiverdecker and Croswell prevented plaintiff from presenting the employment records of a witness at trial, which would have aided plaintiff's defense (*Id.*, ¶ 201).

- Defendants Shiverdecker and Croswell vindictively charged plaintiff with theft in office when she "filed notices of appeal to protect Juvenile Court from harm" after her attorneys failed to answer lawsuits filed against plaintiff (*Id.*, ¶ 205).

- Defendants Shiverdecker and Croswell falsely accused plaintiff of hugging a prospective black juror in the courtroom, resulting in the exclusion of that juror (*Id.*, ¶¶ 223-224).

- Defendants Shiverdecker and Croswell called plaintiff "a liar, fool and other racially derogatory names to illegally influence the jury" (*Id.*, ¶ 226).

- Defendants Shiverdecker and Croswell "knew the verdict in [plaintiff's] trial before it was published in violation of the law" (*Id.*, ¶ 232).

Plaintiff brings the following claims against defendants Shiverdecker and Croswell: (1) a violation of her Fourth, Sixth and Fourteenth Amendment rights under 42 U.S.C. § 1983 based on defendants Shiverdecker and Croswell's failure to disclose exculpatory evidence, failure to impanel an impartial jury, falsification of records, and false accusations, charges and prosecution of plaintiff (*Id.*, ¶ 238); (2) state law claims of defamation and negligent and intentional infliction of emotional distress (*Id.*, ¶¶ 254-275); (3) malicious prosecution under 42 U.S.C. § 1983 (*Id.*, ¶¶ 276-279); (4) malicious abuse of process (*Id.*, ¶¶ 280-287); (5) retaliation and unlawful discrimination under Ohio Rev. Code § 4112 (*Id.*, ¶¶ 288-295); (6) a violation of plaintiff's Sixth Amendment right to a fair trial and impartial grand and petit jury (*Id.*, ¶¶ 308-312); (7) unlawful

detention and confinement under 42 U.S.C. § 1983 (*Id.*, ¶ 314); and (8) conspiracy under 42 U.S.C. § 1985 (*Id.*, ¶¶ 323-325).

## II. Defendant Shiverdecker and Croswell's Motion to Dismiss

Defendants Shiverdecker and Croswell seek dismissal of plaintiff's complaint on several grounds. First, defendants allege they are entitled to absolute prosecutorial immunity as to all claims against them set forth in the complaint. Second, defendants allege that even if they are not entitled to absolute immunity, plaintiff's conclusory allegations are not sufficient to survive a motion to dismiss. Defendants contend that plaintiff has not made any allegations related to the special prosecutor defendants in causes of action two, three, eleven and fifteen of her complaint; plaintiff has failed to state a claim of malicious prosecution against defendants Croswell and Shiverdecker; plaintiff has failed to state a claim for due process violations under the Fifth and Fourteenth Amendment; plaintiff has failed to state a claim for a violation of her equal protection rights; plaintiff has failed to state a claim for defamation against defendants Croswell and Shiverdecker; plaintiff has failed to state a claim for negligent infliction of emotional distress; plaintiff has failed to state a claim for intentional infliction of emotional distress; plaintiff has failed to state a claim for abuse of process; plaintiff has failed to state a claim for retaliation and unlawful discrimination under Ohio Rev. Code § 4112; plaintiff has failed to state a claim for a violation of the Sixth Amendment; and plaintiff has failed to state a claim for violations of 42 U.S.C. § 1985 and 42 U.S.C. § 1986. Third, defendants argue that plaintiff's complaint should be dismissed for lack of subject matter jurisdiction because the Eleventh Amendment bars plaintiff's claims against defendants in their official capacities; the Court lacks subject matter jurisdiction under *Heck v. Humphrey*, 512 U.S. 477 (1994); and plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

## III. Legal standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual

allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## IV. **Absolute prosecutorial immunity**

"State prosecutors are absolutely immune from civil liability when acting within the scope of their prosecutorial duties." *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *Ireland v. Tunis*, 113 F.3d 1435, 1443

(6th Cir.), *cert. denied*, 522 U.S. 996 (1997)). This absolute immunity is justified by the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler,* 424 U.S. at 423. In the absence of absolute immunity, suits subjecting a prosecutor to damages actions would "prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id*. at 427-28. The Supreme Court acknowledged that absolute prosecutorial immunity "does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Id.* at 427.

Prosecutors are entitled to absolute immunity for actions "within the scope of [their] duties in initiating and pursuing a criminal prosecution." *Id*. at 410. In contrast, prosecutors who are "merely giving legal advice or investigating" are not afforded absolute immunity. *Howell*, 668 F.3d at 349. "[T]he critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Id*. (quoting *Ireland*, 113 F.3d at 1443) (internal quotation marks omitted).

The Sixth Circuit has long employed a functional approach in determining whether a prosecutor's actions are "intimately associated with the judicial phase of the criminal process," thereby subjecting him to absolute immunity. *Manetta v. Macomb County Enforcement Team*, 141 F.3d 270, 274 (6th Cir. 1998) (quoting *Imbler*, 424 U.S. at 430). *See also Howell,* 668 F.3d at 349; *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011). Under this approach, the Court views "the nature of the function performed, not the identity of the actor who performed it" in determining whether a prosecutor's actions are entitled to absolute immunity. *Adams*, 656 F.3d

at 402 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988))).  "Absolutely protected acts of advocacy include those 'undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'" *Adams*, 656 F.3d at 402 (quoting *Buckley*, 509 U.S. at 273).  However, "prosecutors are not entitled to absolute immunity for 'investigative' or 'administrative' acts." *Burns v. Reed*, 500 U.S. 478, 483 n.2, 486; *see also Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003).  This includes the act of giving legal advice to police, *Burns*, 500 U.S. at 496; authorizing warrantless wiretaps in the interest of national security, *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985); and making statements in an affidavit supporting an application for an arrest warrant.  *Kalina v. Fletcher*, 522 U.S. 118 (1997).

Nevertheless, "the fact that prosecutors often engage in work that resembles traditional police activities does not remove such acts from the protections of absolute immunity if they were done during the course of preparing for trial." *Howell*, 668 F.3d at 352.  As the Sixth Circuit recently explained:

> A prosecutor is thus absolutely protected when [he] appears in court in support of an application for a search warrant and presents evidence at a probable cause hearing, *Burns*, 500 U.S. at 491-92, and when [he] prepares and files unsworn documents in order to obtain an arrest warrant, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).  Absolute immunity also protects a prosecutor when [he] evaluates evidence and presents that evidence at trial or before a grand jury, *Buckley*, 509 U.S. at 273; *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002), prepares witnesses for trial, *Imbler*, 424 U.S. at 430 n. 32; *Buckley*, 509 U.S. at 273, and even elicits false testimony from witnesses, *Burns*, 500 U.S. at 489-90; *Buckley*, 509 U.S. at 270-71.  By shielding prosecutors engaging in these activities, absolute immunity "serves the policy of protecting the judicial process." *Burns*, 500 U.S. at 492.

*Adams*, 656 F.3d at 402.  Thus, prosecutors are absolutely immune for the initiation and presentation of a case to a grand jury, *Grant v. Hollenbach,* 870 F.2d 1135, 1139 (6th Cir. 1989), and for the initiation of a prosecution and presentation of the State's case at trial, *Imbler*, 424

8

U.S. at 431, which are among the traditional functions of a prosecutor in his role as an advocate for the State. *See Jones v. Shankland,* 800 F.2d 77, 80 (6th Cir. 1986). Courts have consistently recognized that even the knowing presentation of false testimony to a grand jury or a trial jury is protected by absolute immunity. *See Spurlock v. Thompson,* 330 F.3d 791, 797-98 (6th Cir. 2004). *See also Imbler,* 424 U.S. at 413, 430; *Buckley,* 509 U.S. at 267 n.3. "[A]bsolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously." *Lomaz v. Hennosy,* 151 F.3d 493, 498 n. 7 (6th Cir. 1998). Thus, even "a prosecutor who maliciously institutes a false prosecution with no probable cause is entitled to absolute immunity." *Howell,* 668 F.3d at 350 (citing *Buckley*, 509 U.S. at 274 & n.5).

In this case, defendants Croswell and Shiverdecker are entitled to absolute prosecutorial immunity for the actions they allegedly undertook during plaintiff's criminal trial, including: when they allegedly lied to the jury by telling them that Stephen Hunter, plaintiff's brother, was hired by the juvenile court as a personal favor to plaintiff (Doc. 1, ¶ 25); when they read in open court and entered into evidence mail addressed to plaintiff at the juvenile court that plaintiff never received nor knew existed (*Id.*, ¶ 60); when they compelled Lisa Miller, plaintiff's juvenile court case manager, to testify falsely and withheld exculpatory evidence from plaintiff (*Id.*, ¶¶ 76-77, 153); when they prevented plaintiff from presenting the employment records of a witness at trial, which would have aided plaintiff's defense (*Id.*, ¶ 201); when they falsely accused plaintiff of hugging a prospective black juror in the courtroom, resulting in the exclusion of that person from the impanelled jury (*Id.*, ¶¶ 223-224); and when they called plaintiff "a liar, fool and other racially derogatory names to illegally influence the jury" (*Id.*, ¶ 226). All of these actions alleged by plaintiff in her complaint relate to conduct of defendants Croswell and Shiverdecker that is "intimately associated with the judicial phase of the criminal process" and are thus protected by absolute immunity. *Imbler*, 424 U.S. at 430. Likewise, defendants Croswell and

Shiverdecker's alleged actions involving the professional evaluation and use of evidence in preparing for the initiation of criminal proceedings against plaintiff are protected by absolute immunity, including: accusing and charging plaintiff with backdating two judicial entries when such action was taken without plaintiff's consent and at the direction of the juvenile court Executive Director of Case Management, when defendants Shiverdecker and Croswell knew such backdating was an established practice of the Juvenile Court, and when plaintiff was the only one charged with a crime (*Id.*, ¶¶ 75-76, 91, 94, 200); accusing and charging plaintiff with backdating two judicial entries when defendants Shiverdecker and Croswell knew that the juvenile court's computer software program revealed that plaintiff did not create the documents (*Id.*, ¶ 95, 199); accusing plaintiff of supplying medical and/or confidential records to her brother, former juvenile corrections officer Stephen Hunter when defendants Croswell and Shiverdecker knew the accusation to be false (*Id.*, ¶¶ 98, 255); accusing plaintiff of interfering with Stephen Hunter's termination when they knew plaintiff had not been involved and had received information that Mr. Hunter did not wish to be reinstated to his juvenile court job (*Id.*, ¶¶ 99, 117); accusing plaintiff of crimes based on actions that defendants Croswell and Shiverdecker knew were not crimes, but within plaintiff's statutory duties as a juvenile court judge-employer, including defending lawsuits and investigating incidents brought to her attention by juvenile court employees (*Id.*, ¶ 141); and charging plaintiff with theft in office when she "filed notices of appeal to protect Juvenile Court from harm" after her attorneys failed to answer lawsuits filed against plaintiff (*Id.*, ¶ 205). Plaintiff's complaint essentially alleges that defendants Croswell and Shiverdecker sought an indictment against plaintiff and prosecuted her in the absence of evidence to support the charges filed against her. Yet, even accepting the allegations as true for purposes of the motion to dismiss, the Supreme Court in *Buckley* has determined that such actions fall under the cloak of absolute prosecutorial immunity:

Petitioner argues that *Imbler*'s protection for a prosecutor's conduct in initiating a prosecution and in presenting the State's case, extends only to the act of initiation itself and to conduct occurring in the courtroom. This extreme position is plainly foreclosed by our opinion in *Imbler* itself. We expressly stated that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom, and are nonetheless entitled to absolute immunity. We noted in particular that an out-of-court effort to control the presentation of [a] witness' testimony was entitled to absolute immunity because it was fairly within [the prosecutor's] function as an advocate. To be sure, *Burns* made explicit the point we had reserved in *Imbler*: A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley*, 509 U.S. at 272-73 (internal quotation marks and citations omitted). Thus, defendants

Shiverdecker and Croswell would be entitled to absolute immunity for pursuing criminal

charges against plaintiff even in the absence of probable cause or based on "false" evidence as

the decision to charge plaintiff with a crime is a function clearly related to the decision to

prosecute, to which absolute immunity applies. *See Buckley*, 509 U.S. at 274 n.5 ("The reason

that we grant [absolute immunity] for the latter function (malicious prosecution) is that we

have found a common-law tradition of immunity for a prosecutor's decision to bring an

indictment, whether he has probable cause or not."); *Gregory v. City of Louisville*, 444 F.3d

725, 740 (6th Cir. 2006) ("The *Buckley* Court dismissed the argument that probable cause was

a dividing line for potential liability attendant to prosecutors' actions."). *See also Burns*, 500

U.S. at 484 (prosecutors have absolute immunity from "suits for malicious prosecution and . . .

this immunity extend[s] to the knowing use of false testimony before the grand jury and at

trial"); *Spurlock*, 330 F.3d at 797 ("[P]rosecutors are absolutely immune from many malicious

prosecution claims."); *Grant*, 870 F.2d at 1138-40 (prosecutors absolutely immune from claims

of conspiring to bring false charges, failing to investigate, and falsely obtaining an indictment).

Finally, plaintiff alleges that defendants "Shiverdecker or Croswell purposefully, with intent to vindictively and maliciously prosecute [plaintiff], caused Juvenile Court's software provider ProWare to execute an affidavit that alleged two entries were backdated; included the dates and times the entries were executed, but intentionally excluded the name of the individual that created the entries in the system which all Defendants knew was not [plaintiff]." (*Id.*, ¶ 143).

It appears that plaintiff may be alleging that the special prosecutors' failure to include the author of the system entries, which plaintiff alleges is someone other than plaintiff and would absolve her of any criminal liability, amounts to a failure to disclose exculpatory evidence contrary to *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Doc. 1, ¶ 153 ("Defendants . . . Shiverdecker . . . and Croswell intentionally withheld exculpatory evidence in [plaintiff's] criminal trial, which was specifically requested, knowing said evidence would refute criminal allegations they made against her."). Yet, "prosecutors have absolute immunity from civil liability for the non-disclosure of exculpatory information at trial." *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citing *Imbler*, 424 U.S. at 431 n. 34). Even if such actions were undertaken "maliciously" and "vindictively" to prosecute plaintiff with the intent to harm her career and to defame her name and reputation as plaintiff alleges, defendants Croswell and Shiverdecker are nevertheless entitled to absolute immunity.[2] *Id. See also Howell*, 668 F.3d at 350; *Lomaz,* 151 F.3d at 498 n.7. Moreover, defendants Croswell and Shiverdecker would be

---

[2] In any event, plaintiff fails to allege how the special prosecutors "caused" the execution of the affidavit, when this allegedly occurred, or what use, if any, the special prosecutors made of such affidavit. Plaintiff has not alleged any injury stemming from this action and in the absence of any facts showing whether the special prosecutors used the affidavit to somehow deprive plaintiff of her constitutional rights, the complaint in this respect fails to state a claim for relief under Section 1983. *Cf. Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) ("The manufacture of false evidence, in and of itself . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right.").

entitled to absolute immunity for such actions because they relate to their roles as advocates for the State in preparing for the initiation of a prosecution or for judicial proceedings.  Thus, defendants Croswell and Shiverdecker are absolutely immune from liability for the actions they allegedly took against plaintiff as set forth in the complaint. [3]

Defendants Croswell and Shiverdecker are entitled to absolute immunity for their actions under Ohio law as well.  Pursuant to Ohio Rev. Code § 2744.03(A)(7), "The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant to such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code."  Section 2744.03(A)(7) thus preserves the absolute immunity available to prosecutors at common law.  *Barstow v. Waller*, No. 04CA5, 2004 WL 2427396, at *6 (Ohio Ct. App. Oct. 26, 2004).  Under Ohio common law, "prosecutors are considered 'quasi-judicial officers' entitled to absolute immunity granted judges, when their activities are 'intimately associated with the judicial phase of the criminal process.'"  *Willitzer v. McCloud*, 453 N.E.2d 693, 695 (Ohio 1983) (quoting *Imbler*, 424 U.S. at 430).  Similar to federal law, Ohio law grants absolute immunity to a prosecutor for initiating and maintaining a prosecution against a criminal defendant.  *Id.*  Plaintiff challenges the special prosecutors' decision to initiate the prosecution against her and for their in-court actions.  As explained above, defendants Croswell and Shiverdecker are entitled to absolute prosecutorial immunity for their actions relating to the initiation of charges against plaintiff and the prosecution of

---

[3] To the extent plaintiff alleges that the special prosecutors had never served as special prosecutors before (Doc. 1, ¶ 151), made in excess of one-half million dollars (*Id.*, ¶ 152), and "knew the verdict in [plaintiff's] trial before it was published in violation of the law" (*Id.*, ¶ 232), these allegations do not state a claim for relief under § 1983. In the absence of any supporting factual allegations or citation of authority from plaintiff, the general claims asserted in these paragraphs of plaintiff's complaint do not provide the Court or defendants with "fair notice" of plaintiff's claims against them and "the grounds upon which [they] rest." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Erickson*, 551 U.S. at 93.

plaintiff on those charges.  Therefore, plaintiff's state law claims are subject to dismissal on the basis of absolute immunity under Ohio common law.

### V. Conclusion

It is therefore **RECOMMENDED** that the motion to dismiss of defendants Croswell and Shiverdecker (Doc. 37) be **GRANTED** as they are entitled to absolute immunity for the actions alleged by plaintiff in her complaint.[4]

Date: 4/26/16

Karen L. Litkovitz
United States Magistrate Judge

---

[4] The Court need not reach defendants' other arguments relating to the dismissal of plaintiff's complaint as the issue of absolute prosecutorial immunity is dispositive of their motion.

14

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

HON. TRACIE M. HUNTER,
    Plaintiff,

    vs.

HAMILTON COUNTY, *et al.*,
    Defendants.

Case No. 1:15-cv-540
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).