UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HON. TRACIE M. HUNTER,
    Plaintiff,

vs.

HAMILTON COUNTY, *et al.*,
    Defendants.

Case No. 1:15-cv-540
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Tracie Hunter, a suspended judge of the Hamilton County, Ohio Juvenile Court, brings this pro se civil rights action against Hamilton County, Ohio and numerous other defendants under 42 U.S.C. § 1983; the Privacy Act of 1974, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552; 42 U.S.C. § 1985; 42 U.S.C. § 1986; and state and common law. (*See generally* Doc. 1). This matter is before the Court on the motion to dismiss of defendant Honorable Norbert Nadel (Doc. 39), to which plaintiff has not responded.[1]

### I. Background

Plaintiff is an African American female who was elected as a judge of the Hamilton County, Ohio Juvenile Court in November 2010. However, plaintiff was not seated as a judge until May 25, 2012, following a lawsuit in this Court over the counting of provisional ballots.

---

[1] On November 10, 2015, defendant Nadel filed his motion to dismiss. (Doc. 39). Thereafter, plaintiff was granted a stay of proceedings pending the resolution of plaintiff's state court criminal retrial. (Doc. 54). The stay was conditioned on the parties' filing a motion to reinstate the case on the Court's active docket within 30 days after the conclusion of plaintiff's state court criminal retrial. (*Id.*). As part of the stay, plaintiff was granted an extension of time of 30 days to respond to the pending motions to dismiss, including defendant Nadel's motion, once the case was reinstated to the active docket. (*Id.*). On January 25, 2016, this case was reinstated to the Court's active docket and, in accordance with the Court's previous order, plaintiff was granted 30 days to respond to the motions to dismiss. (Doc. 60). On February 24, 2016, plaintiff requested a further extension of time of 60 days to respond to the pending motions to dismiss. (Doc. 69). Over the objections of defendants, the Court granted plaintiff's motion, giving plaintiff until April 25, 2016 to file her responses to the pending motions to dismiss. (Doc. 74). The Court's Order specified that "[n]o further extensions of time shall be granted in the absence of a showing of extraordinary circumstances." (*Id.* at 2). Plaintiff has not filed any responses to the pending motions to dismiss by the April 25, 2016 deadline, nor has she requested a further extension of time based on extraordinary circumstances by the April 25, 2016 deadline.

*See Hunter v. Hamilton County Board of Elections*, Case No. 1:10-cv-820 (S.D. Ohio).[2]

In 2014, plaintiff was indicted in the Hamilton County Court of Common Pleas on nine felony counts: two counts of tampering with evidence, two counts of forgery, two counts of having an unlawful interest in a public contract, two counts of theft in office, and one count of misuse of a credit card. *See State of Ohio v. Tracie Hunter*, Case Nos. B 1400110 and B1400199. Plaintiff was convicted on one count of having an unlawful interest in a public contract. The jury was unable to agree on a unanimous verdict as to the remaining counts and a mistrial on those counts was declared. Plaintiff's retrial on the remaining counts was scheduled to begin January 19, 2016. On the first day of plaintiff's retrial, the prosecuting attorneys dismissed the remaining charges against plaintiff. *Id.; see also State of Ohio v. Tracie M. Hunter*, Case No. B 1501273.

Meanwhile, plaintiff appealed her conviction for having an unlawful interest in a public contract to the First District Ohio Court of Appeals. The Court of Appeals affirmed plaintiff's conviction. *See State v. Hunter*, Nos. C-140684, C-140704, C-140717, 2016 WL 196972 (Ohio Ct. App. Jan. 15, 2016). Plaintiff then filed an appeal with the Ohio Supreme Court, which remains pending. Plaintiff has been suspended from the practice of law, *see In re Hunter*, 21 N.E.3d 1070 (Ohio 2014), and is disqualified from acting as a judge. *See In re Disqualification of Hunter*, 1 N.E.3d 432 (table) (Ohio 2014).

On August 18, 2015, plaintiff commenced this federal court action against 21 defendants alleging violations of her constitutional and state law rights. The defendants are Hamilton County, Ohio officials, former and current judges, the two special prosecutors from her criminal trial, and two court-appointed lawyers who were hired to defend plaintiff in lawsuits filed against her during her tenure as a juvenile court judge. The complaint alleges causes of action for civil rights violations,

---

[2] Federal courts may take judicial notice of proceedings in courts of record. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82 83 (6th Cir. 1969)). *See also National Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 839 n.2 (6th Cir. 2010); *Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999).

breach of contract, defamation, negligent and intentional infliction of emotional distress, malicious prosecution, retaliation, unlawful discrimination, and conspiracy, among others.

As it relates to the instant motion to dismiss, the complaint alleges the following against the defendant Honorable Norbert Nadel:

- Defendant Nadel prevented plaintiff from presenting the employment records of a witness at trial, which would have aided plaintiff's defense (Doc. 1, ¶ 201).

- Defendant Nadel "made malicious false statements regarding [plaintiff's] actions as a Judge, violating her constitutional rights and depriving her of a fair trial in violation of the law" (*Id.*, ¶ 218).

- Defendant Nadel made inflammatory, false statements regarding plaintiff even though he had never been in plaintiff's courtroom, had not viewed her videotaped hearings, and had not presided over any juvenile court cases (*Id.*, ¶ 219).

- Defendant Nadel allowed the prosecutors in open court to "publicly abuse, dehumanize, terrorize and victimize" plaintiff during courtroom proceedings (*Id.*, ¶ 220).

- Defendant Nadel allowed the media throughout her trial in his courtroom to "publicly abuse, dehumanize, terrorize and victimize" plaintiff during courtroom proceedings (*Id.*, ¶ 221).

- Defendant Nadel systematically excluded black jurors from plaintiff's jury; he wrongfully dismissed a potential black juror after the special prosecutors falsely accused plaintiff of hugging a prospective black juror in the courtroom, resulting in the exclusion of that juror; and he relied on the "misrepresentations" of the special prosecutors in excluding another black juror when he knew that live camera footage could have been reviewed on the matter to refute the false representation (*Id.*, ¶¶ 222-225).

- Defendant Nadel allowed the special prosecutors to call plaintiff "a liar, fool and other racially derogatory names to illegally influence the jury" (*Id.*, ¶ 226).

- Defendant Nadel "knew that the jury was stacked with colleagues of juvenile court personnel, neighbors of witnesses and judges, friends of John Williams, lawyers, an employee of WCPO, the station that sued her and daily trashed Judge Hunter's name; and the wife of a lawyer that worked for the law firm that represented WCPO against Hunter, who expressed a public distrust and disdain for pastors, knowing Judge Hunter is a pastor" (*Id.*, ¶ 227).

- Defendant Nadel refused to recuse himself despite receiving campaign contributions from defendants Deters, Croswell and Shiverdecker (*Id.*, ¶228).

- Defendant Nadel knew that defendant Deters received campaign contributions from the special prosecutors and knew they were defendant Deters' lawyers (*Id.*, ¶229).

- Defendant Nadel appointed the jury foreperson to help the special prosecutors influence the jury (*Id.*, ¶ 230).

- Defendant Nadel was handpicked to preside over plaintiff's trial and shared he would preside over her trial before Judge Hunter was indicted (*Id.*, ¶ 231).

- Defendant Nadel "knew the verdict in [plaintiff's] trial before it was published in violation of the law" and "knew the verdict was illegally shared" (*Id.*, ¶ 232-33).

Plaintiff brings the following claims against defendant Nadel: (1) a violation of her Fourth, Sixth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 based on defendant Nadel's legal rulings at trial and failure to impanel an impartial jury (*Id.*, ¶ 238); (2) state law claims of negligent and intentional infliction of emotional distress (*Id.*, ¶¶ 262-275); (3) retaliation and unlawful discrimination under Ohio Rev. Code § 4112 (*Id.*, ¶¶ 288-295); (4) a violation of plaintiff's Sixth Amendment right to a fair trial and impartial grand and petit jury (*Id.*, ¶¶ 308-312); (5) unlawful detention and confinement under 42 U.S.C. § 1983 (*Id.*, ¶ 314); and (6) conspiracy under 42 U.S.C. § 1985 (*Id.*, ¶¶ 323-325).

## II. Defendant Nadel's Motion to Dismiss

Defendant Nadel seeks dismissal of plaintiff's complaint on several grounds. First, defendant Nadel alleges that the Eleventh Amendment bars plaintiff's claims against him in his official capacity. Second, defendant Nadel alleges he is entitled to absolute immunity in both his official and individual capacities. Third, defendant Nadel alleges that plaintiff's claims are barred by the *Rooker-Feldman* doctrine. Fourth, defendant Nadel alleges that plaintiff's complaint fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

## III. Legal standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual

allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

### IV. Absolute judicial immunity

Plaintiff's claims against defendant Nadel are barred by absolute judicial immunity. Judges are afforded absolute immunity from § 1983 liability for acts they commit while functioning within their judicial capacity. *Pierson v. Ray,* 386 U.S. 547, 553-54 (1967). As the

5

Supreme Court has explained:

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.

*Id.* at 554. Notably, absolute judicial immunity "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Id.* (internal quotation marks omitted). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991); *Barrett v. Harrington,* 130 F.3d 246, 254 (6th Cir. 1997). Judges retain absolute immunity from liability even if they act maliciously or corruptly, as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against them. *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). *See Bright v. Gallia Cty., Ohio,* 753 F.3d 639, 649 (6th Cir. 2014), *cert. denied,* 135 S. Ct. 1561 (2015) (judge entitled to absolute judicial immunity even though actions "were petty, unethical, and unworthy of his office" where judge and court of common pleas had subject-matter jurisdiction over underlying criminal proceeding). There are two exceptions to absolute judicial immunity: "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 11-12 (internal citations omitted).

In this case, the majority of plaintiff's allegations against defendant Nadel involve his alleged conduct in the courtroom and at trial: ruling on the admissibility of evidence (Doc. 1, ¶

6

201), making statements on the record (*Id.*, ¶¶ 218, 219), overseeing the conduct of the trial participants and spectators (*Id.*, ¶¶ 220, 221, 226), and ruling on challenges to prospective jurors and appointing the jury foreperson (*Id.*, ¶¶ 222-225, 227, 230). Defendant Nadel's actions at trial are undoubtedly "judicial" as they are functions normally performed by a judge. *See Stump*, 435 U.S. at 362. Defendant Nadel's actions are "paradigmatic judicial acts" – those that pertain to the resolution of disputes among parties in court – and "are the touchstone for application of judicial immunity." *Brookings v. Clunk,* 389 F.3d 614, 617 (6th Cir. 2004) (internal quotations omitted). Even assuming, *arguendo*, that defendant Nadel's actions can be characterized as "egregious, unjustified, or misleading, the acts were no less judicial." *Huffer v. Bogen*, 503 F. App'x 455, 459 (6th Cir. 2012) (citing *Brookings*, 389 F.3d at 617; *Stump*, 435 U.S. at 356-57). Plaintiff's complaint alleges no facts indicating that defendant Nadel did not have subject matter jurisdiction over plaintiff's criminal case or that he performed non-judicial acts that somehow violated plaintiff's rights. *Stern,* 262 F.3d at 607. Therefore, defendant Nadel is absolutely immune from civil liability for his in-court actions.

Plaintiff's remaining allegations against defendant Nadel can best be described as alleging bias on the part of defendant Nadel that infected the fairness of the trial proceedings: refusing to recuse himself despite having received campaign contributions from other defendants (Doc. 1, ¶ 228), knowing the relationship between the special prosecutors and the county prosecutor defendants (*Id.*, ¶ 229), and being "handpicked" to preside over plaintiff's trial (*Id.*, ¶ 231).[3] However, even allegations of bias or misconduct do not render defendant Nadel's actions

---

[3] To the extent plaintiff alleges that defendant Nadel "knew the verdict in [plaintiff's] trial before it was published in violation of the law" (*Id.*, ¶ 232), this allegation does not state a claim for relief under § 1983. In the absence of any supporting factual allegations or citation of authority from plaintiff, the general claim asserted in this paragraph of plaintiff's complaint does not provide the Court or defendant Nadel with "fair notice" of plaintiff's claim against him and the grounds upon which it rests. *See Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555); *Erickson,* 551 U.S. at 93.

7

non-judicial. "[A] defendant cannot avoid the bar of judicial immunity by relying on non-judicial, out-of-court acts that may have affected in-court, judicial acts. Personal bias alone of a judge – when not serving in a judicial function – does not create a due-process violation." *King v. McCree*, 573 F. App'x 430, 441 (6th Cir. 2014) (granting judicial immunity even though judge engaged in sexual relationship with complaining witness in felony child-support case while also presiding over the case), *cert. denied,* 135 S. Ct. 1175 (2015). *See also Guttman v. Silverberg*, 167 F. App'x 1, 4-5 (10th Cir. 2005) ("Whether or not Judge Lang accepted ex parte communications, was biased against Guttman, or should have recused himself does not abrogate the immunity or render his acts nonjudicial."). Therefore, defendant Nadel is absolutely immune from liability for the actions he allegedly took against plaintiff as set forth in the complaint.

Defendant Nadel is entitled to absolute immunity for his actions under Ohio law as well. Pursuant to Ohio Rev. Code § 2744.03(A)(7), "The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant to such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code." Section 2744.03(A)(7) thus preserves the absolute immunity available to judges at common law. *Easterling v. Brogan*, No. 24902, 2012 WL 1484511, at *2 (Ohio Ct. App. April 27, 2012). Similar to federal law, Ohio common law grants absolute immunity to judges. "It is well-settled that a judge is immune from civil liability for actions taken in his judicial capacity when jurisdiction is proper." *Kelly v. Whiting*, 477 N.E.2d 1123, 1127 (Ohio 1985) (citing *Wilson v. Neu*, 465 N.E.2d 854 (Ohio 1984); *Voll v. Steele*, 47 N.E.2d 991 (Ohio 1943)). As explained above, defendant Nadel is entitled to absolute judicial immunity for his decisions and actions while presiding over plaintiff's criminal trial. Therefore, plaintiff's state

8

law claims are subject to dismissal on the basis of absolute immunity under Ohio common law.

**V. Eleventh Amendment Immunity**

Finally, plaintiff has not stated a claim upon which relief may be granted to the extent she seeks to hold defendant Nadel liable under § 1983 in his official capacity. The Eleventh Amendment does not bar § 1983 individual-capacity suits against state officials, who may be held personally liable for actions taken as part of their official duties that deprive a person of his constitutional rights. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). However, by the same token, it is well-settled that state officials, sued for monetary relief in their official capacities, are not "persons" within the meaning of § 1983. *Id.* at 25-26 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). As the Supreme Court has explained, "[a]lthough 'state officials literally are persons,' an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is not different from a suit against the State itself.'" *Id.* at 26 (quoting *Will*, 491 U.S. at 71). Therefore, because the Eleventh Amendment bars suits for money damages against the State, it also bars suits against state employees sued in their official, as opposed to individual, capacities. *See Will*, 491 U.S. at 66-71; *see also Quern v. Jordan*, 440 U.S. 332, 340-41 (1979).

The Hamilton County Court of Common Pleas is part of the Ohio state court system, created by the Ohio state legislature, and subject to the supervision of the Ohio Supreme Court. Ohio Rev. Code § 2301.01(A); Ohio Const., Art. IV § 4(A). The Sixth Circuit has determined that Ohio courts of common pleas are arms of the state for purposes of the Eleventh Amendment. *See Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997).[4] *See also Smith v.*

---

[4] District courts within Ohio have acknowledged the unsettled nature of the law in this area following Supreme Court rulings focusing on whether the state would be legally liable for any judgment in a sovereign immunity analysis. *See Jones v. Prob. Court of Wayne Cty.*, No. 5:15-cv-1859, 2016 WL 231311, at *2 (N.D. Ohio Jan. 19, 2016) (citing *Akire v. Irving*, 330 F.3d 802, 812 (6th Cir. 2003) (in turn citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 430 (1997); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994)); *Ortiz v. Holmes*, No. 4:15-cv-

*Grady*, 960 F. Supp.2d 735, 751 (S.D. Ohio 2013). Accordingly, the Hamilton County Court of Common Pleas is an arm of the state for purposes of Eleventh Amendment immunity, and a suit against Judge Nadel in his official capacity is a suit against the state of Ohio. *See id.; Davis v. Jackson Cnty. Mun. Court*, 941 F. Supp.2d 870, 878-79 (S.D. Ohio 2013). *Cf. Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 765 (6th Cir. 2010). As such, plaintiff's claims against defendant Nadel in his official capacity are barred by the Eleventh Amendment.

### VI. Conclusion

It is therefore **RECOMMENDED** that defendant Nadel's motion to dismiss (Doc. 39) be **GRANTED** as he is entitled to absolute judicial immunity and Eleventh Amendment immunity for the actions alleged by plaintiff in her complaint.[5]

Date: 4/28/16

Karen L. Litkovitz
United States Magistrate Judge

---

1085, 2016 WL 199043, at *5 (N.D. Ohio Jan. 18, 2016); *Winston v. Franklin Cty.*, No. 2:10-cv-1005, 2013 WL 684742, at *6 (S.D. Ohio Feb. 25, 2013). In any event, the Sixth Circuit has not overruled its prior decisions finding state courts in Ohio to be arms of the state for purposes of Eleventh Amendment immunity. *Id.* (citing *Triplett v. Connor*, 109 F. App'x 94, 96 n.4 (6th Cir. 2004) (while acknowledging "some doubt about the continued validity of *Mumford's* reasoning," the court held that "[w]e have not, however, decided that *Mumford* was incorrect"). And this Court has recently acknowledged the continued viability of *Mumford*. *Smith*, 960 F. Supp.2d at 751.

[5] The Court need not reach defendant Nadel's other arguments relating to the dismissal of plaintiff's complaint as the defenses of absolute judicial immunity and Eleventh Amendment immunity are dispositive of his motion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HON. TRACIE M. HUNTER,
    Plaintiff,

vs.

HAMILTON COUNTY, *et al.*,
    Defendants.

Case No. 1:15-cv-540
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).