## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| HON. TRACIE M. HUNTER,<br>Plaintiff,<br><br>vs.<br><br>HAMILTON COUNTY, *et al.*,<br>Defendants. | Case No. 1:15-cv-540<br>Barrett, J.<br>Litkovitz, M.J.<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff Tracie Hunter, a suspended judge of the Hamilton County, Ohio Juvenile Court,
brings this pro se civil rights action against Hamilton County, Ohio and numerous other
defendants under 42 U.S.C. § 1983; the Privacy Act of 1974, 5 U.S.C. § 552a; the Freedom of
Information Act, 5 U.S.C. § 552; 42 U.S.C. § 1985; 42 U.S.C. § 1986; and state and common
law. (*See generally* Doc. 1).  This matter is before the Court on the motion to dismiss of
defendants Judge Sylvia Sieve Hendon, Judge Penelope Cunningham, Judge Patrick DeWine,
Judge Patrick Dinkelacker, and Judge Lee H. Hildebrandt (collectively, Judges of the First
District Court of Appeals of Ohio) (Doc. 19), to which plaintiff has not responded.[1]

### I. Background

Plaintiff is an African American female who was elected as a judge of the Hamilton
County, Ohio Juvenile Court in November 2010.  However, plaintiff was not seated as a judge
until May 25, 2012, following a lawsuit in this Court over the counting of provisional ballots.

---

[1] On September 11, 2015, defendants Judges of the First District Court of Appeals of Ohio filed their motion to
dismiss. (Doc. 19).  Thereafter, plaintiff was granted a stay of proceedings pending the resolution of plaintiff's state
court criminal retrial. (Doc. 54).  The stay was conditioned on the parties' filing a motion to reinstate the case on the
Court's active docket within 30 days after the conclusion of plaintiff's state court criminal retrial.  (*Id.*).  As part of
the stay, plaintiff was granted an extension of time of 30 days to respond to the pending motions to dismiss,
including defendants' instant motion, once the case was reinstated to the active docket. (*Id.*).  On January 25, 2016,
this case was reinstated to the Court's active docket and, in accordance with the Court's previous order, plaintiff was
granted 30 days to respond to the motions to dismiss. (Doc. 60).  On February 24, 2016, plaintiff requested a further
extension of time of 60 days to respond to the pending motions to dismiss. (Doc. 69).  Over the objections of
defendants, the Court granted plaintiff's motion, giving plaintiff until April 25, 2016 to file her responses to the
pending motions to dismiss. (Doc. 74).  The Court's Order specified that "[n]o further extensions of time shall be
granted in the absence of a showing of extraordinary circumstances." (*Id.* at 2).  Plaintiff has not filed any responses
to the pending motions to dismiss by the April 25, 2016 deadline, nor has she requested a further extension of time
based on extraordinary circumstances by the April 25, 2016 deadline.

*See Hunter v. Hamilton County Board of Elections*, Case No. 1:10-cv-820 (S.D. Ohio).[2]

In 2014, plaintiff was indicted in the Hamilton County Court of Common Pleas on nine felony counts: two counts of tampering with evidence, two counts of forgery, two counts of having an unlawful interest in a public contract, two counts of theft in office, and one count of misuse of a credit card. *See State of Ohio v. Tracie Hunter*, Case Nos. B 1400110 and B1400199. Plaintiff was convicted on one count of having an unlawful interest in a public contract. The jury was unable to agree on a unanimous verdict as to the remaining counts and a mistrial on those counts was declared. Plaintiff's retrial on the remaining counts was scheduled to begin January 19, 2016. On the first day of plaintiff's retrial, the prosecuting attorneys dismissed the remaining charges against plaintiff. *Id.; see also State of Ohio v. Tracie M. Hunter*, Case No. B 1501273.

Meanwhile, plaintiff appealed her conviction for having an unlawful interest in a public contract to the First District Ohio Court of Appeals. The Court of Appeals affirmed plaintiff's conviction. *See State v. Hunter*, Nos. C-140684, C-140704, C-140717, 2016 WL 196972 (Ohio Ct. App. Jan. 15, 2016). Plaintiff then filed an appeal with the Ohio Supreme Court, which remains pending. Plaintiff has been suspended from the practice of law, *see In re Hunter*, 21 N.E.3d 1070 (Ohio 2014), and is disqualified from acting as a judge. *See In re Disqualification of Hunter*, 1 N.E.3d 432 (table) (Ohio 2014).

On August 18, 2015, plaintiff commenced this federal court action against 21 defendants alleging violations of her constitutional and state law rights. The defendants are Hamilton County, Ohio officials, former and current judges, the two special prosecutors from her criminal trial, and two court-appointed lawyers who were hired to defend plaintiff in lawsuits filed against her during her tenure as a juvenile court judge. The complaint alleges causes of action for civil rights violations, breach of contract, defamation, negligent and intentional infliction of emotional distress, malicious

---

[2] Federal courts may take judicial notice of proceedings in courts of record. *See Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82 83 (6th Cir. 1969)). *See also National Union Fire Ins. Co. v. VP Bldgs., Inc.,* 606 F.3d 835, 839 n.2 (6th Cir. 2010); *Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999).

prosecution, retaliation, unlawful discrimination, and conspiracy, among others.

As it relates to the instant motion to dismiss, the complaint alleges the following against defendants Judges of the First District Court of Appeals of Ohio:

- Defendant Cunningham ordered plaintiff to jail with no explanation (Doc. 1, ¶ 154).

- Defendant Hendon, a former juvenile court judge, knew there was a systemic backlog of cases in juvenile court and "arbitrarily and errantly ruled" against plaintiff by holding her to a different standard than white juvenile court judges (*Id.*, ¶¶ 176-77).

- Defendant Hendon improperly granted default judgment against plaintiff (*Id.*, ¶ 178).

- Defendants Hendon, Cunningham, Hildebrandt, Dinkelacker and DeWine should have known, had they properly reviewed the procedural postures of each writ, that plaintiff could not rule in cases where decisions had already been rendered and should not have granted default judgments against plaintiff, harming her judicial reputation and career (*Id.*, ¶ 179).

- Defendant Hendon in court records accused plaintiff of being derelict and made reckless statements about plaintiff to "cover up" defendant Hendon's history in prior cases (*Id.*, ¶ 180).

- Defendant Hendon had a conflict of interest when she presided over plaintiff's juvenile court cases in plaintiff's absence and was acting as both an Ohio Court of Appeals judge and visiting judge to the juvenile court (*Id.*, ¶ 181).

- Defendants Hendon, DeWine, Cunningham, Dinkelacker and Hildebrandt made derogatory comments in court pleadings about plaintiff with malicious intent to harm her reputation, treating her differently than white judges (*Id.*, ¶ 182); accused plaintiff of routinely denying access to her courtroom in reckless disregard for the truth (*Id.*, ¶ 183); relied solely on the pleadings written and prepared by the Hamilton County Prosecutor's Office and routinely denied her the right to defend said suits (*Id.*, ¶ 184); vindictively and maliciously accused plaintiff of not following the law when they knew plaintiff's actions comported with the local rules of practice in effect at the time (*Id.*, ¶ 185); held plaintiff in contempt of court "after they falsely stated in a court record that [plaintiff] did not follow a court order when they knew such statement was false" (*Id.*, ¶ 186); "knew or should have known that the media and juvenile court . . . treated African-American children disparately and discriminately" (*Id.*, ¶ 187); wrongfully subjected her rulings, pleadings

3

and judicial actions to arbitrary review and caused black children to be treated differently (*Id.*, ¶ 188); granted default motions and struck pleadings filed by plaintiff's lawyers denying plaintiff the right to counsel despite knowing that her lawyers recklessly failed to answer 12 lawsuits filed against plaintiff (*Id.*, ¶¶ 189-90); knew that the County's failure to appoint independent counsel to represent plaintiff in 20 lawsuits brought against her violated her rights (*Id.*, ¶ 191); and knew that when defendant "Hendon's son-in-law Defendant Deters brought some of those lawsuits against [plaintiff], the law and a clear conflict of interest prohibited Defendant Deters from representing [plaintiff] and from hand picking counsel to represent [plaintiff] (*Id.*, ¶ 192).

Plaintiff brings the following claims against defendants Judges of the First District Court of Appeals of Ohio: (1) a violation of her Fourth, Sixth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 (*Id.*, ¶ 238); (2) state law claims of negligent and intentional infliction of emotional distress (*Id.*, ¶¶ 262-275); (3) retaliation and unlawful discrimination under Ohio Rev. Code § 4112 (*Id.*, ¶¶ 288-295); and (4) conspiracy under 42 U.S.C. § 1985 (*Id.*, ¶¶ 323-325).

## II.  Defendants Judges of the First District Court of Appeals of Ohio's Motion to Dismiss

Defendants Judges of the First District Court of Appeals of Ohio seek dismissal of plaintiff's complaint on several grounds.  First, defendants allege that the Eleventh Amendment bars plaintiff's claims against them in their official capacities.  Second, defendants allege they are entitled to absolute immunity in both their official and individual capacities.  Third, defendants allege that plaintiff's claims are barred by the *Rooker-Feldman* doctrine.  Fourth, defendants allege that plaintiff's complaint fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

## III.  Legal standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party.  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575

(6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

**IV. Absolute judicial immunity**

Plaintiff's claims against defendants Judges of the First District Court of Appeals of Ohio are barred by absolute judicial immunity. Judges are afforded absolute immunity from § 1983 liability for acts they commit while functioning within their judicial capacity. *Pierson v. Ray,* 386 U.S. 547, 553-54 (1967). As the Supreme Court has explained:

> It is a judge's duty to decide all cases within his jurisdiction that are brought
> before him, including controversial cases that arouse the most intense feelings in
> the litigants.  His errors may be corrected on appeal, but he should not have to
> fear that unsatisfied litigants may hound him with litigation charging malice or
> corruption.  Imposing such a burden on judges would contribute not to principled
> and fearless decisionmaking but to intimidation.

*Id.* at 554.  Notably, absolute judicial immunity "is not for the protection or benefit of a

malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges

should be at liberty to exercise their functions with independence and without fear of

consequences." *Id.* (internal quotation marks omitted).  "Like other forms of official immunity,

judicial immunity is an immunity from suit, not just from ultimate assessment of damages."

*Mireles v. Waco,* 502 U.S. 9, 11 (1991); *Barrett v. Harrington,* 130 F.3d 246, 254 (6th Cir.

1997).  Judges retain absolute immunity from liability even if they act maliciously or corruptly,

as long as they are performing judicial acts and have jurisdiction over the subject matter giving

rise to the suit against them. *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). *See Bright v.

Gallia Cty., Ohio*, 753 F.3d 639, 649 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1561 (2015) (judge

entitled to absolute judicial immunity even though actions "were petty, unethical, and unworthy

of his office" where judge and court of common pleas had subject-matter jurisdiction over

underlying criminal proceeding).  There are two exceptions to absolute judicial immunity:

"First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the

judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature,

taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (internal citations

omitted).

In this case, the majority of plaintiff's allegations against defendants Judges of the First

District Court of Appeals of Ohio involve their actions in ruling on various appeals and matters

filed against plaintiff:  ordering plaintiff to jail (Doc. 1, ¶ 154), "arbitrarily and errantly rul[ing]"

against plaintiff (*Id*., ¶¶ 176-77), granting default judgment against plaintiff (*Id*., ¶ 178), not

properly reviewing the procedural postures of each writ against plaintiff brought before them

(*Id*., ¶ 179), accusing plaintiff of being derelict in her duties and not following the law and

making reckless and derogatory statements about plaintiff in court documents (*Id*., ¶¶ 180, 182,

183, 185), relying solely on the pleadings written and prepared by the Hamilton County

Prosecutor's Office and routinely denying plaintiff the right to defend such suits (*Id*., ¶ 184),

holding her in contempt of court (*Id*., ¶ 186), subjecting her rulings, pleadings and judicial

actions to arbitrary review (*Id*., ¶ 188), and granting default motions and striking pleadings filed

by plaintiff's lawyers (*Id*., ¶¶ 189-90).  The actions of defendants Judges of the First District

Court of Appeals of Ohio are undoubtedly "judicial" as they are functions normally performed

by appellate court judges.  *See Stump*, 435 U.S. at 362.  Such "paradigmatic judicial acts" – those

that pertain to the resolution of disputes among parties in court – "are the touchstone for

application of judicial immunity."  *Brookings v. Clunk,* 389 F.3d 614, 617 (6th Cir. 2004)

(internal quotations omitted).  Even assuming, *arguendo*, that the actions of defendants Judges of

the First District Court of Appeals of Ohio can be characterized as "egregious, unjustified, or

misleading, the acts were no less judicial."  *Huffer v. Bogen*, 503 F. App'x 455, 459 (6th Cir.

2012) (citing *Brookings*, 389 F.3d at 617; *Stump*, 435 U.S. at 356-57).  Plaintiff's complaint

alleges no facts indicating that defendants Judges of the First District Court of Appeals of Ohio

did not have subject matter jurisdiction over the writs or appellate matters that came before them

or that that they performed non-judicial acts that somehow violated plaintiff's rights.  *Stump*, 435

U.S. at 361-62.  Therefore, defendants Judges of the First District Court of Appeals of Ohio are

absolutely immune from civil liability for their actions.

Plaintiff also alleges that defendants Judges of the First District Court of Appeals of Ohio

knew that the County's failure to appoint independent counsel to represent plaintiff in 20 lawsuits brought against her violated her rights (*Id.*, ¶ 191) and knew that when defendant "Hendon's son-in-law Defendant Deters brought some of those lawsuits against [plaintiff], the law and a clear conflict of interest prohibited Defendant Deters from representing [plaintiff] and from hand picking counsel to represent [plaintiff]" (*Id.*, ¶ 192).  To the extent plaintiff may be alleging bias on the part of defendants that infected the fairness of their rulings and proceedings, plaintiff's allegations of bias or misconduct do not render the actions of defendants non-judicial. "[A] defendant cannot avoid the bar of judicial immunity by relying on non-judicial, out-of-court acts that may have affected in-court, judicial acts.  Personal bias alone of a judge – when not serving in a judicial function – does not create a due-process violation." *King v. McCree*, 573 F. App'x 430, 441 (6th Cir. 2014) (granting judicial immunity even though judge engaged in sexual relationship with complaining witness in felony child-support case while also presiding over the case), *cert. denied,* 135 S. Ct. 1175 (2015). *See also Guttman v. Silverberg*, 167 F. App'x 1, 4-5 (10th Cir. 2005) ("Whether or not Judge Lang accepted ex parte communications, was biased against Guttman, or should have recused himself does not abrogate the immunity or render his acts nonjudicial.").  Therefore, defendants Judges of the First District Court of Appeals of Ohio are absolutely immune from liability for the actions they allegedly took against plaintiff as set forth in the complaint.

Defendants Judges of the First District Court of Appeals of Ohio are entitled to absolute immunity for their actions under Ohio law as well.  Pursuant to Ohio Rev. Code § 2744.03(A)(7), "The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant to such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code." Section

8

2744.03(A)(7) thus preserves the absolute immunity available to judges at common law. *Easterling v. Brogan*, No. 24902, 2012 WL 1484511, at \*2 (Ohio Ct. App. April 27, 2012). Similar to federal law, Ohio common law grants absolute immunity to judges. "It is well-settled that a judge is immune from civil liability for actions taken in his judicial capacity when jurisdiction is proper." *Kelly v. Whiting*, 477 N.E.2d 1123, 1127 (Ohio 1985) (citing *Wilson v. Neu*, 465 N.E.2d 854 (Ohio 1984); *Voll v. Steele*, 47 N.E.2d 991 (Ohio 1943)). As explained above, defendants Judges of the First District Court of Appeals of Ohio are entitled to absolute judicial immunity for their decisions and actions while presiding over plaintiff's appellate matters. Therefore, plaintiff's state law claims are subject to dismissal on the basis of absolute immunity under Ohio common law.

### V. Standing

Plaintiff also alleges that defendant Hendon had a conflict of interest when she presided over plaintiff's juvenile court cases in her absence and was acting as both an Ohio Court of Appeals judge and visiting judge to the juvenile court (*Id.*, ¶ 181), and that defendants Judges of the First District Court of Appeals of Ohio "knew or should have known that the media and juvenile court . . . treated African-American children disparately and discriminately" (*Id.*, ¶ 187). Plaintiff's complaint in these respects must be dismissed for lack of standing. Plaintiff has not alleged that she suffered any harm as a result of these actions and she has no standing to raise the constitutional claims of other individuals. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). *See also Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties") (citation and internal quotation omitted). Therefore, any claims based on the actions alleged in paragraphs 181 and 187 of plaintiff's complaint should be dismissed.

9

## VI. Eleventh Amendment Immunity

Finally, plaintiff has not stated a claim upon which relief may be granted to the extent she seeks to hold liable defendants Judges of the First District Court of Appeals of Ohio under § 1983 in their official capacities. The Eleventh Amendment does not bar § 1983 individual-capacity suits against state officials, who may be held personally liable for actions taken as part of their official duties that deprive a person of his constitutional rights. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). However, by the same token, it is well-settled that state officials, sued for monetary relief in their official capacities, are not "persons" within the meaning of § 1983. *Id.* at 25-26 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). As the Supreme Court has explained, "[a]lthough 'state officials literally are persons,' an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is not different from a suit against the State itself.'" *Id.* at 26 (quoting *Will*, 491 U.S. at 71). Therefore, because the Eleventh Amendment bars suits for money damages against the State, it also bars suits against state employees sued in their official, as opposed to individual, capacities. *See Will*, 491 U.S. at 66-71; *see also Quern v. Jordan*, 440 U.S. 332, 340-41 (1979).

The Ohio Courts of Appeal are part of the Ohio state court system, created by the Ohio state legislature, and subject to the supervision of the Ohio Supreme Court. Ohio Rev. Code § 2501.01(A); Ohio Const., Art. IV § 3(A), § 5. "The organization and jurisdiction of the Ohio Appellate Courts is contained in the Ohio Constitution, Art. IV, § 3, which describes them as arms of the state judicial branch." *Rowser v. Ohio*, No. 5:12-cv-0610, 2013 WL 123784, at *10 (N.D. Ohio Jan. 9, 2013). Because a "judgment against the Courts would be a judgment against the State of Ohio," the First District Court of Appeals of Ohio is an arm of the state for purposes of the Eleventh Amendment immunity, and a suit against the judges of that court in

10

their official capacities is a suit against the state of Ohio. *Id.* (citing *Metz v. Supreme Court of Ohio*, 46 F. App'x 228, 236-37 (6th Cir. 2002)). *See also Howard v. Commonwealth of Virginia*, 8 F. App'x 318, 319 (6th Cir. 2001) ("A state court is an arm of the state, entitled to Eleventh Amendment immunity.") (citing *Mumford v. Basinski*, 105 F.3d 264, 267-70 (6th Cir. 1997))[3]; *Helfrich v. Markus*, No. 2:12-cv-736, 2013 WL 317031, at *3 (S.D. Ohio Jan. 28, 2013) (suit against judges of Fifth District Court of Appeals of Ohio in their official capacities barred by Eleventh Amendment immunity). *Cf. Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 765 (6th Cir. 2010). As such, plaintiff's claims against defendants Judges of the First District Court of Appeals of Ohio in their official capacities are barred by the Eleventh Amendment and should be dismissed.

### VI. Conclusion

It is therefore **RECOMMENDED** that defendants Judges of the First District Court of Appeals of Ohio's motion to dismiss (Doc. 19) be **GRANTED**.[4]

Date: _4/28/16_

Karen L. Litkovitz
United States Magistrate Judge

---

[3] District courts within Ohio have acknowledged the unsettled nature of the law in this area following Supreme Court rulings focusing on whether the state would be legally liable for any judgment in a sovereign immunity analysis. *See Jones v. Prob. Court of Wayne Cty.*, No. 5:15-cv-1859, 2016 WL 231311, at *2 (N.D. Ohio Jan. 19, 2016) (citing *Akire v. Irving*, 330 F.3d 802, 812 (6th Cir. 2003) (in turn citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 430 (1997); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994)); *Ortiz v. Holmes*, No. 4:15-cv-1085, 2016 WL 199043, at *5 (N.D. Ohio Jan. 18, 2016); *Winston v. Franklin Cty.*, No. 2:10-cv-1005, 2013 WL 684742, at *6 (S.D. Ohio Feb. 25, 2013). In any event, the Sixth Circuit has not overruled its prior decisions finding state courts in Ohio to be arms of the state for purposes of Eleventh Amendment immunity. *Winston*, 2013 WL 684742, at *6 (citing *Triplett v. Connor*, 109 F. App'x 94, 96 n.4 (6th Cir. 2004) (while acknowledging "some doubt about the continued validity of *Mumford's* reasoning," the court held that "[w]e have not, however, decided that *Mumford* was incorrect")). And this Court has recently acknowledged the continued viability of *Mumford. See Smith v. Grady*, 960 F. Supp. 2d 735, 751 (S.D. Ohio 2013).

[4] The Court need not reach defendants' other arguments relating to the dismissal of plaintiff's complaint as the defenses of absolute judicial immunity, standing, and Eleventh Amendment immunity are dispositive of their motion.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

HON. TRACIE M. HUNTER,
    Plaintiff,

    vs.

HAMILTON COUNTY, *et al.*,
    Defendants.

Case No. 1:15-cv-540
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).