UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HON. TRACIE M. HUNTER,
    Plaintiff,

vs.

HAMILTON COUNTY, *et al.*,
    Defendants.

Case No. 1:15-cv-540
Barrett, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Tracie Hunter, a suspended judge of the Hamilton County, Ohio Juvenile Court, brings this pro se civil rights action against Hamilton County, Ohio and numerous other defendants under 42 U.S.C. § 1983; the Privacy Act of 1974, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552; 42 U.S.C. § 1985; 42 U.S.C. § 1986; and state and common law. (*See generally* Doc. 1). This matter is before the Court on the motions to dismiss of defendants James Bogen (Doc. 30) and Firooz Namei (Doc. 36), the court-appointed lawyers who were hired to defend plaintiff in lawsuits filed against her during her tenure as a juvenile court judge, to which plaintiff has not responded.[1]

**I. Background**

Plaintiff is an African American female who was elected as a judge of the Hamilton County, Ohio Juvenile Court in November 2010. However, plaintiff was not seated as a judge

---

[1] Defendant Bogen filed his motion to dismiss on October 30, 2015 and defendant Namei filed his motion to dismiss on November 10, 2015. (Docs. 30, 36). Thereafter, plaintiff was granted a stay of proceedings pending the resolution of plaintiff's state court criminal retrial. (Doc. 54). The stay was conditioned on the parties' filing a motion to reinstate the case on the Court's active docket within 30 days after the conclusion of plaintiff's state court criminal retrial. (*Id.*). As part of the stay, plaintiff was granted an extension of time of 30 days to respond to the pending motions to dismiss, including defendants' instant motions, once the case was reinstated to the active docket. (*Id.*). On January 25, 2016, this case was reinstated to the Court's active docket and, in accordance with the Court's previous order, plaintiff was granted 30 days to respond to the motions to dismiss. (Doc. 60). On February 24, 2016, plaintiff requested a further extension of time of 60 days to respond to the pending motions to dismiss. (Doc. 69). Over the objections of defendants, the Court granted plaintiff's motion, giving plaintiff until April 25, 2016 to file her responses to the pending motions to dismiss. (Doc. 74). The Court's Order specified that "[n]o further extensions of time shall be granted in the absence of a showing of extraordinary circumstances." (*Id.* at 2). Plaintiff has not filed any responses to the pending motions to dismiss by the April 25, 2016 deadline, nor has she requested a further extension of time based on extraordinary circumstances by the April 25, 2016 deadline.

until May 25, 2012, following a lawsuit in this Court over the counting of provisional ballots. *See Hunter v. Hamilton County Board of Elections*, Case No. 1:10-cv-820 (S.D. Ohio).[2]

In 2014, plaintiff was indicted in the Hamilton County Court of Common Pleas on nine felony counts: two counts of tampering with evidence, two counts of forgery, two counts of having an unlawful interest in a public contract, two counts of theft in office, and one count of misuse of a credit card. *See State of Ohio v. Tracie Hunter*, Case Nos. B 1400110 and B1400199. Plaintiff was convicted on one count of having an unlawful interest in a public contract. The jury was unable to agree on a unanimous verdict as to the remaining counts and a mistrial on those counts was declared. Plaintiff's retrial on the remaining counts was scheduled to begin January 19, 2016. On the first day of plaintiff's retrial, the prosecuting attorneys dismissed the remaining charges against plaintiff. *Id.; see also State of Ohio v. Tracie M. Hunter*, Case No. B 1501273.

Meanwhile, plaintiff appealed her conviction for having an unlawful interest in a public contract to the First District Ohio Court of Appeals. The Court of Appeals affirmed plaintiff's conviction. *See State v. Hunter*, Nos. C-140684, C-140704, C-140717, 2016 WL 196972 (Ohio Ct. App. Jan. 15, 2016). Plaintiff then filed an appeal with the Ohio Supreme Court, which remains pending. Plaintiff has been suspended from the practice of law, *see In re Hunter*, 21 N.E.3d 1070 (Ohio 2014), and is disqualified from acting as a judge. *See In re Disqualification of Hunter*, 1 N.E.3d 432 (table) (Ohio 2014).

On August 18, 2015, plaintiff commenced this federal court action against 21 defendants alleging violations of her constitutional and state law rights. The defendants are Hamilton County, Ohio officials, former and current judges, the two special prosecutors from her criminal trial, and two court-appointed lawyers who were hired to defend plaintiff in lawsuits filed against her during her

---

[2] Federal courts may take judicial notice of proceedings in courts of record. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82 83 (6th Cir. 1969)). *See also National Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 839 n.2 (6th Cir. 2010); *Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999).

tenure as a juvenile court judge. The complaint alleges causes of action for civil rights violations, breach of contract, defamation, negligent and intentional infliction of emotional distress, malicious prosecution, retaliation, unlawful discrimination, and conspiracy, among others.

As it relates to the instant motions to dismiss, the complaint alleges the following against the defendants Bogen and Namei:

- Defendants Bogen and Namei intentionally, recklessly, and/or negligently failed to file answers in 12 cases filed against plaintiff when she was a juvenile court judge, resulting in default judgments against her (Doc. 1, ¶¶ 202, 206, 208-10).

- Defendants Bogen and Namei refused to defend plaintiff but still accepted money from the County for work they did not do (*Id.*, ¶¶ 207, 216).

- Defendants Bogen and Namei refused to provide plaintiff with her legal file upon request (*Id.*, ¶ 211).

- Defendants Bogen and Namei lost every case filed against plaintiff and then refused to file appeals (*Id.*, ¶¶ 212-13).

- Defendants Bogen and Namei followed the advice of defendant Deters, the Hamilton County Prosecutor, in lawsuits filed against plaintiff even though Deters was legally barred and conflicted from representing plaintiff (*Id.*, ¶ 214).

- Defendant Bogen told people that he owed defendant Deters, the Hamilton County Prosecutor, for giving him plaintiff's cases to defend (*Id.*, ¶ 215).

- Defendants Bogen and Namei had no experience in juvenile court law when they were appointed to represent plaintiff in her official capacity (*Id.*, ¶¶ 202, 217).

Plaintiff brings the following claims against defendants Bogen and Namei: (1) a violation of her constitutional rights under 42 U.S.C. § 1983 based on defendants Bogen and Namei's withholding and/or denying access to plaintiff's legal files and failing to effectively defend and assist her in lawsuits filed against her (*Id.*, ¶ 238); (2) state law claims of negligent and intentional infliction of emotional distress (*Id.*, ¶¶ 262-75); (3) retaliation and unlawful discrimination under Ohio Rev. Code § 4112 (*Id.*, ¶¶ 288-300); (4) malpractice (*Id.*, ¶¶ 301-03);

3

(5) unlawful detention and confinement under 42 U.S.C. § 1983 (*Id.*, ¶ 314); and (6) conspiracy under 42 U.S.C. § 1985 (*Id.*, ¶¶ 323-25).

### II. Defendant Bogen and Namei's Motions to Dismiss

Defendants seek dismissal of plaintiff's complaint on several grounds. First, defendants argue that plaintiff lacks standing to pursue claims against them related to their representation because they represented plaintiff only in her official capacity as a juvenile court judge and she no longer holds that office. Second, defendants contend that because they are not state actors, plaintiff cannot bring claims against them under § 1983. Third, defendants argue that plaintiff's state law claims are barred under the one-year statute of limitations for malpractice actions. Fourth, defendants contend that because no federal claims remain against them, it is inappropriate for the Court to retain supplemental jurisdiction over plaintiff's state law claims. Fifth, defendants argue that plaintiff's claims are barred by the *Rooker-Feldman* doctrine and *Heck v. Humphrey*, 512 U.S. 477 (1994). Sixth, defendants contend the Court should abstain from considering plaintiff's claims under *Younger v. Harris*, 401 U.S. 37 (1971). Seventh, defendants argue that plaintiff's claims are barred by res judicata and collateral estoppel. Eighth, defendant Namei argues that if he is considered to be acting in the place of the county prosecutor for purposes of establishing state action under § 1983, then he is entitled to qualified immunity. Finally, as to plaintiff's state law claims, defendants contend she has failed to state a valid claim upon which relief may be granted.

### III. Legal standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is

4

entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## IV. Article III Standing

"The threshold question in every federal case is whether the court has the judicial power to entertain the suit." *Parson v. U.S. Dep't of Justice*, 801 F.3d 701, 709 (6th Cir. 2015) (quoting *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). "Article III of the United States Constitution prescribes that federal courts may exercise jurisdiction only where an actual 'case or controversy' exists." *Id.* at 709-10 (citing U.S. Const. art. III, § 2). "Courts have explained the 'case or controversy' requirement through a series of 'justiciability doctrines,' including, 'perhaps the most important,' that a litigant must have 'standing' to invoke the

jurisdiction of the federal courts." *Id.* at 710 (citing *Magaw*, 132 F.3d at 279). The Supreme Court has held that the following elements are necessary to establish standing:

> First, Plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Here, plaintiff alleges that defendants Bogen and Namei's failure to file answers in the state court actions filed against her resulted in default judgments that harmed her reputation. (Doc. 1, ¶ 202). The Sixth Circuit has held that "[r]eputational injury . . . is sufficient to establish an injury in fact." *Parsons*, 801 F.3d at 711 (citing *Meese v. Keene*, 481 U.S. 465, 473-76 (1987)). Defendant Namei argues that plaintiff cannot establish the causation element for standing because she cannot show that his alleged actions were the but-for and proximate causes of plaintiff's reputational injury. (*See* Doc. 36 at 16-17). However, the Sixth Circuit has explained that "causation need not be proximate" and "the fact that an injury is indirect does not destroy standing as a matter of course." *Parsons*, 801 F.3d at 713 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1391 n.6 (2014); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 (1973)). Construing plaintiff's complaint in the light most favorable to her, she has sufficiently alleged causation because the default judgments giving rise to the alleged reputational injury likely would not have been entered if defendants had filed answers.

Finally, for plaintiff to have constitutional standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. As monetary damages would compensate plaintiff for at least some of her alleged injuries, plaintiff has satisfied the redressability element for constitutional standing. *See Nader v. Blackwell*, 545 F.3d 459, 472 (6th Cir. 2008).[3]

## V. Prudential Standing

Beyond constitutional standing under Article III, "which involves absolute and irrevocable justiciability requirements," courts have created the doctrine of prudential standing "as a tool of 'judicial self-governance.'" *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

> Prudential standing requirements preclude litigation in federal court "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens," or where instead of litigating "[her] own legal rights and interests," the plaintiff instead purports to "rest [her] claim to relief on the legal rights or interests of third parties." [*Warth*, 422 U.S. at 499]. Additionally, prudential standing includes a requirement that "the plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge Christian Coll.*, 454 U.S. [464,] 475 [(1982)].

---

[3] Defendant Namei argues that plaintiff's injury cannot be redressed by a decision in her favor because she seeks only monetary damages to which defendant Namei has qualified immunity. (*See* Doc. 36 at 18-19). However, the question of constitutional standing does not depend on whether the defendant has a viable defense or whether the plaintiff even states a viable claim for relief. "A plaintiff may satisfy the injury-in-fact requirements to have standing under Article III, and thus may be able to 'bring a civil action without suffering dismissal for want of standing to sue,' without being able to assert a cause of action successfully." *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) (citing *Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (stating that a plaintiff may have "injury enough to open the courthouse door, but without more [may have] no cause of action" under which he can successfully obtain relief)). The threshold question of standing "in no way depends on the merits of the [case]. . . ." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). "Whether [plaintiff] has standing to bring § 1983 claims . . . is distinct from whether her case succeeds on the merits." *Mayrides v. Delaware Cty. Comm'rs*, 666 F. Supp.2d 861, 867 (S.D. Ohio 2009). The Court must determine in the first instance whether it has "jurisdiction under Article III of the United States Constitution before proceeding to the merits of the [defendant's] claim of [] immunity from suit." *Webb v. City of Dallas*, 314 F.3d 787, 790 (5th Cir. 2002). *See also Nader*, 545 F.3d at 472-478 (finding plaintiff had standing to pursue civil suit for money damages, but also finding defendant entitled to qualified immunity from suit). Thus, whether defendant Namei is entitled to the defense of qualified immunity on the merits of plaintiff's constitutional claims does not affect the Court's finding that plaintiff has constitutional standing in this matter.

*Prime Media, Inc.*, 485 F.3d at 349.

Here, defendants Bogen and Namei represented plaintiff in her official capacity as a juvenile court judge. *See* Ohio Rev. Code § 305.14(A).[4] Thus, they were representing the institution of the juvenile court, not plaintiff individually. On this basis, defendants argue that any harm caused by their alleged ineffective representation was to the juvenile court as an institution, not to plaintiff personally. Therefore, because plaintiff is no longer a juvenile court judge, defendants argue that she cannot bring a claim on behalf of the juvenile court, which would be the only party injured by defendants' alleged actions. Defendants are correct that plaintiff lacks prudential standing to bring a claim based on the legal rights or interests of the juvenile court as she does not currently hold the office of juvenile judge. *See Prime Media, Inc.*, 485 F.3d at 349. However, plaintiff's complaint alleges injury to her reputation based on defendants' actions that harmed her personally beyond any harm to the office of the juvenile court. (*See* Doc. 1, ¶¶ 202, 213). Accordingly, while plaintiff does not have prudential standing to bring claims on behalf of the juvenile court, she possesses standing to address the personal reputational harm allegedly attributable to defendants' actions. Nevertheless, while plaintiff has standing to raise her claims against defendants Bogen and Namei, she has failed to state a claim against them upon which relief may be granted, as set forth below.

### VI. 42 U.S.C. § 1983

"A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the

---

[4] Under Ohio law, the county prosecutor shall defend all suits and actions to which a county officer is a party. *See* Ohio Rev. Code § 309.09(A). A county judge qualifies as a "county officer" for purposes of this provision. *See State ex rel. Wilke v. Hamilton Cty. Bd. of Comm'rs*, 734 N.E.2d 811, 821 (Ohio 2000); *State ex rel. Hillyer v. Tuscarawas Cty. Bd. of Comm'rs*, 637 N.E.2d 311, 314-15 (Ohio 1994). The court of common pleas may authorize the board of county commissioners to employ outside legal counsel to assist the county prosecutor in the defense of any action or proceeding in which a county officer is a party in her official capacity. Ohio Rev. Code § 305.14(A). A conflict of interest on the part of the county prosecutor warrants appointment of outside counsel under § 305.14(A). *See Wilke*, 734 N.E.2d at 821; *Hillyer*, 637 N.E.2d at 314-15.

Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)).

Here, plaintiff cannot show that defendants Bogen and Namei's alleged actions deprived her of a constitutional right. Plaintiff has alleged in her complaint two constitutional violations related to the actions of defendants Bogen and Namei: (1) their failure to effectively defend and assist her in lawsuits filed against her, and (2) their withholding and/or denying her access to her legal files. (*See* Doc. 1 at ¶¶ 202, 206, 208-11, 238). However, "[i]t is well-settled that there is no constitutional or statutory right to effective assistance of counsel in a civil case." *Adams v. Vidor*, 12 F. App'x 317, 319 (6th Cir. 2001) (citing *Friedman v. Ariz.*, 912 F.2d 328, 333 (9th Cir. 1990); *Glick v. Henderson*, 855 F.2d 536, 541 (8th Cir. 1988)). Further, while rules of professional ethics require an attorney who no longer represents a client to deliver "to the client all papers and property to which the client is entitled," including "items *reasonably* necessary to the client's representation," Ohio R. Prof. Conduct 1.16(d), such a professional failure does not implicate a constitutional right. This is because, again, plaintiff does not have a constitutional right to representation in a civil case. *See Adams*, 12 F. App'x at 319. Thus, because plaintiff's allegations against defendants Bogen and Namei do not make out a violation of a constitutional right, she has failed to state a claim under § 1983 upon which relief can be granted. *See Tahfs*, 316 F.3d at 590. Accordingly, plaintiff's claim under § 1983 should be dismissed.

### VII. Negligent and Intentional Infliction of Emotional Distress

"To state a claim for negligent infliction of emotional distress under Ohio law, the plaintiff must allege that [s]he was aware of real physical danger to [herself] or another." *Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008) (citing *Heiner v. Moretuzzo*, 652 N.E.2d 664, 669 (Ohio 1995); *King v. Bogner*, 624 N.E.2d 364, 367 (Ohio Ct. App. 1993)). "Ohio courts

9

have limited recovery for negligent infliction of emotional distress to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." *Heiner,* 652 N.E.2d at 669 (citations omitted).

Plaintiff's complaint fails to allege a claim of negligent infliction of emotional distress against defendants Bogen and Namei. Plaintiff alleges that her severe emotional distress was related to the "stigma of being falsely accused and wrongfully convicted of a crime while holding a judicial office" as well as "baseless criminal prosecutions, charges, misrepresentations and other actions, and denial of due process and equal protection under the law." (Doc. 1, ¶¶ 263-64, 267-68). None of plaintiff's allegations involves an awareness of "real physical danger to [herself] or another." *Doe,* 551 F.3d at 417. Therefore, plaintiff's claim for negligent infliction of emotional distress should be dismissed.

A claim for intentional infliction of emotion distress under Ohio law includes the following four elements:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Pyle v. Pyle,* 463 N.E.2d 98, 103 (Ohio Ct. App. 1983) (internal citations and quotations omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hayward v. Cleveland Clinic Found.,* 759 F.3d 601, 619 (6th Cir. 2014) (citation omitted). A party acts in an extreme and outrageous manner when "the recitation of the facts to an average member of the community

10

would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (citation omitted).

Plaintiff's complaint fails to state a claim of intentional infliction of emotional distress against defendants Bogen and Namei. First, plaintiff has not alleged that defendants' alleged actions related to their representation of her were intended to cause her emotional distress or that they knew or should have known that those actions would result in serious emotional distress. *See Pyle*, 463 N.E.2d at 103. Second, the failure to file documents in court and the withholding of a case file do not go "beyond all possible bounds of decency" and would not "extract the exclamation of 'outrageous!' from a reasonable person." *Id.* at 103-04. Third, plaintiff has not alleged that defendants Bogen and Namei's actions caused the criminal prosecution that was the source of plaintiff's alleged emotional distress. Thus, she has not alleged that their actions were the proximate cause of her psychic injury. *Id.* at 103. Accordingly, plaintiff's emotional distress claims should be dismissed.

### VIII. Ohio Rev. Code § 4112

In alleging retaliation under Ohio Rev. Code § 4112, plaintiff states that she was accused of crimes after she filed ethics complaints and exposed violations of law occurring within the juvenile court. (Doc. 1, ¶¶ 289-90). In alleging unlawful discrimination under Ohio Rev. Code § 4112.02, plaintiff states that she was wrongfully harassed and wrongfully suspended on the basis of her race. (*Id.*, ¶ 297). Plaintiff has failed to allege sufficient factual matter concerning defendants Bogen and Namei to make these claims "plausible on [their] face" as to them. *See Iqbal*, 556 U.S. at 678. Plaintiff's allegations against defendants Bogen and Namei—that they failed to effectively represent her and withheld her case file when their representation of her ended—do not lead to "the reasonable inference that [they are] liable for the misconduct alleged" related to plaintiff's claims under § 4112. *Id.* Plaintiff has made no allegations against

11

defendants Bogen and Namei that suggest they accused her of crimes or were involved in her employer's wrongful harassment and suspension of her. Accordingly, plaintiff's claims of retaliation and discrimination under §4112 should be dismissed.

### IX. Malpractice

Under Ohio law there is a one-year limitations period for malpractice actions. *Simon v. Nadler, Nadler & Burdman Co., L.P.A.*, 142 F. App'x 894, 895 (6th Cir. 2005); Ohio Rev. Code § 2305.11(A).

> [A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that [her] injury was related to [her] attorney's act or non-act and the client is put on notice of a need to pursue [her] possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 538 N.E.2d 398, 401 (Ohio 1989). *See also Smith v. Conley*, 846 N.E.2d 509, 511-12 (Ohio 2006).

Here, between September 18, 2013, and December 24, 2013, the state court entered the judgments against plaintiff in her official capacity that she alleges were the result of defendants Bogen and Namei's ineffective representation. (*See generally*, Doc. 30-3, Exh. C). Thus, plaintiff discovered or should have discovered the injury related to defendants' acts or non-acts by December 24, 2013. Further, the Ohio Supreme Court disqualified plaintiff from acting as a judge on January 10, 2014. *See In re Disqualification of Hunter*, 1 N.E.3d 432 (table) (Ohio Jan. 10, 2014). At this point, defendants Bogen and Namei's representation of plaintiff terminated as she no longer held the position on which their representation of her in her official capacity was based. *See* Ohio Rev. Code § 305.14(A). Accordingly, the statute of limitations began to run in January 2014, when the attorney-client relationship ended, and plaintiff had until January 2015 to file her malpractice claim. *See Zimmie*, 538 N.E.2d at 401; Ohio Rev. Code § 2305.11(A).

However, plaintiff did not file this federal court action until August 18, 2015, after the statute of limitations had already expired. Accordingly, plaintiff's malpractice claim was filed beyond the limitations period and should be dismissed.

### X. Unlawful Detention and Confinement

Plaintiff has failed to allege sufficient factual matter concerning defendants Bogen and Namei from which one could draw "the reasonable inference that [they are] liable for" her alleged unlawful detention and confinement. *Iqbal*, 556 U.S. at 678. Accordingly, plaintiff's claim should be dismissed for failing to meet the required pleading threshold of plausibility. *See id.*

### XI. Conspiracy

Plaintiff alleges that all defendants in this action acted in concert to deprive her of her rights of due process and equal protection. (Doc. 1, ¶ 324). This conclusory allegation fails to state a claim upon which relief can be granted under 42 U.S.C. § 1985. The Sixth Circuit has held that a plaintiff fails to state a claim for relief under § 1985 when she "offered nothing more than the conclusory allegation that the defendants acted in concert and, without more, failed to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive [her] of [her] civil rights." *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008). Accordingly, plaintiff's conspiracy claim should be dismissed.

### XII. Conclusion

Consistent with the foregoing, it is therefore **RECOMMENDED** that the motions to

13

dismiss of defendants Bogen (Doc. 30) and Namei (Doc. 36) be **GRANTED**.

Date: 5/10/16

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

HON. TRACIE M. HUNTER,
    Plaintiff,

vs.

HAMILTON COUNTY, *et al.*,
    Defendants.

Case No. 1:15-cv-540
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).